UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
TOOLS AVIATION, LLC,

                        Plaintiff,

        - against -

DIGITAL PAVILION ELECTRONICS
LLC, EAST BROOKLYN LABS LLC,
and FIREMALL LLC,

                        Defendants.
----------------------------------------------------------x

**MEMORANDUM & ORDER**
20-CV-2651 (PKC) (VMS)

PAMELA K. CHEN, United States District Judge:

      Plaintiff Tools Aviation, LLC sued Defendants Digital Pavilion Electronics LLC ("Digital"), East Brooklyn Labs LLC ("East Brooklyn"), and Firemall LLC ("Firemall") (collectively, "Defendants"), for selling "battery caddies" in violation of three of Plaintiff's patents. Plaintiff now seeks to dismiss Defendants' counterclaim for tortious interference with business relations. For the reasons discussed below, the Court grants Plaintiff's motion to dismiss Defendants' counterclaim.

## BACKGROUND

      Plaintiff makes and sells a "battery caddy" under the trademarks Storacell® and Powerpax® (the "Storacell®" device) (*see* Complaint ("Compl."), Dkt. 1, ¶¶ 17–21), pictured below:

1



(*see* Dkt. 39, at 2; *see also* STORACELL BATTERY MANAGEMENT, *AA – 12 Packs*, https://storacell.net/products/aa-packs/#single/0 (last visited Sept. 17, 2021)).

Plaintiff designed the Storacell® for pilots to store and dispense batteries in emergencies. (*See* Compl., Dkt. 1, ¶ 22.) The Storacell® also can provide a convenient battery storage method for use in homes, cars, offices, and shops. (*Id.*)

On October 30, 2007, the United States Patent and Trademark Office ("PTO") issued U.S. Patent No. 7,287,648 to Plaintiff, entitled "Battery Holder and Dispenser." (*See* U.S. Patent No. 7,287,648 ("Patent '648"), Dkt. 1-1.) On September 18, 2012, the PTO issued U.S. Patent No. 8,267,252 to Plaintiff, entitled "Battery Holder and Dispensing Package." (*See* U.S. Patent No. 8,267,252 ("Patent '252"), Dkt. 1-2.) On May 5, 2015, the PTO issued U.S. Patent No. 9,022,218 to Plaintiff, also entitled "Battery Holder and Dispensing Package." (*See* U.S. Patent No. 9,022,218 ("Patent '218"), Dkt. 1-3.)

2

Sometime before October 16, 2019, Defendants began selling the "RadCad Battery Charger and Caddy for AA Rechargeable Batteries" ("RadCad") and the "East Brooklyn Labs Durable AA Battery Storage" ("RadCad Caddy") (Compl., Dkt. 1, ¶ 25), pictured below:



(*see* Dkt. 1-16 (annotations removed); *see also* AMAZON, *RadCad Battery Charger and Caddy for AA Rechargeable Batteries*, https://www.amazon.com/dp/B07N8KGBPV?ref=vse_pfo_vdp (last visited Sept. 17, 2021)).

On October 17, 2019, Digital received a complaint notice from Amazon.com ("Amazon"), indicating that Defendants' sales of the RadCad had infringed on two of Plaintiff's patents. (Third Amended Answer ("TAA"), Dkt. 24, ¶¶ 118.) The complaint had been filed by Shawnta Mateja, daughter of Richard Foreman, Plaintiff's president. (*Id.* ¶¶ 118, 121.) Digital responded via letter

3

that it was not infringing. (*Id.* ¶ 119.) Shawnta Mateja filed another complaint with Amazon, and Digital again responded that it was not infringing. (*Id.* ¶ 120.) An attorney for Plaintiff then wrote to counsel for Defendants, asserting that Digital and East Brooklyn had infringed on all three of Plaintiff's patents. (*Id.* ¶ 122.) The parties continued to disagree in correspondence over whether there had been infringement. (*Id.* ¶¶ 122–125.)

On June 15, 2020, Plaintiff filed the complaint in the instant action, claiming that Defendants sell battery caddies in violation of Plaintiff's Patents '648, '252, and '218. (*See* Compl., Dkt. 1; TAA, Dkt. 24, ¶ 126.) On August 26, 2020, Digital sued Plaintiff in this Court, under docket number 20-cv-3975 (PKC) (VMS) (the "Digital Pavilion Action"), alleging tortious interference with Digital's business and seeking a declaratory judgment of non-infringement of the patents in Plaintiff's complaint. (*See* Complaint, 20-cv-3975 (PKC) (VMS) (E.D.N.Y. Aug. 26, 2020), ECF No. 1.)

On September 23, 2020, Defendants filed an answer in the instant action. (Dkt. 9.) The following day, Defendants filed an Amended Answer, and Digital voluntarily dismissed the Digital Pavilion Action. (*See* Amended Answer, Dkt. 13; Notice of Voluntary Dismissal, No. 20-cv-3975 (PKC) (VMS), ECF 10.) The Amended Answer asserted a counterclaim mirroring the causes of action that Digital had asserted in the Digital Pavilion Action, namely, a declaratory judgment for patent non-infringement and tortious interference. (*Compare* Amended Answer, Dkt. 13, ¶¶ 131–140, *with* Complaint, No. 20-cv-3975 (PKC) (VMS), ECF 1, ¶¶ 21–32.)

On October 15, 2020, Plaintiff filed a request for a pre-motion conference in advance of a motion to dismiss Defendants' counterclaim. (Motion for a Pre-Motion Conference, Dkt. 17.) Defendants responded on October 20, 2020, and agreed to dismiss the non-infringement declaratory judgment portion of Defendants' counterclaim. (Defendants' Response to the Request

4

for a Pre-Motion Conference ("Def. Rep."), Dkt. 19, at 2.)  On October 26, 2020, the Court construed the pre-motion conference letter as a motion to dismiss the counterclaim and ordered supplemental briefing.  (10/26/20 Docket Order.)  Defendants filed a Second Amended Answer later that day, and a Corrected Second Amended Answer the following day.  (Dkts. 20, 22.)

On November 3, 2020, Defendants filed the Third Amended Answer ("TAA").  (TAA, Dkt. 24.)  The TAA, now the operative answer, still includes a counterclaim for tortious interference.  (*Id.* ¶¶ 135–40.)  On November 13, 2020, Plaintiff filed its supplemental brief, now seeking to dismiss the one counterclaim in the TAA (Plaintiff's Supplemental Memorandum in Support ("Pl. Supp."), Dkt. 25), and Defendants filed their supplemental response on November 19, 2020 (Defendants' Supplemental Memorandum ("Def. Supp."), Dkt. 27).  Plaintiff seeks dismissal of Defendants' tortious interference counterclaim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## LEGAL STANDARDS

### I. Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) allows a defendant to move to dismiss a complaint for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1).  "When the Rule 12(b)(1) motion is facial, *i.e.*, based solely on the allegations of the complaint or the complaint and exhibits attached to it[], the plaintiff has no evidentiary burden." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (citation omitted).

### II. Federal Rule of Civil Procedure 12(b)(6)

"A motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint." *Holborn Corp. v. Sawgrass Mut. Ins. Co.*, 304 F. Supp. 3d 392, 397 (S.D.N.Y. 2018) (citations and quotations omitted).  Rule 12(b)(6) allows a defendant to move to dismiss a complaint for failure to state a claim on which relief may be granted. Fed. R. Civ. P.

5

12(b)(6).  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted).

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted).  "In addressing the sufficiency of a complaint, [the Court] accept[s] as true all factual allegations and draw[s] from them all reasonable inferences; but [the Court is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).

## DISCUSSION

### I.  Subject Matter Jurisdiction

In its supplemental letter, Plaintiff contends that the Court lacks subject-matter jurisdiction over Defendants' tortious interference counterclaim.  Unlike past versions of the Answer, the TAA appears to premise jurisdiction for the counterclaim on diversity.  (TAA, Dkt. 24, ¶ 116.)  Plaintiff argues that Defendants have failed to adequately allege diversity jurisdiction because they do not assert damages, aside from the conclusory allegation that the damages "exceed[] $75,000." (TAA, Dkt. 24, ¶ 115.)

6

    **A.**    **Legal Standard**

        1.    <u>Diversity Jurisdiction</u>

28 U.S.C. § 1332 "establishes that diversity jurisdiction exists over civil actions between 'citizens of different States,' 'where the matter in controversy exceeds the sum or value of $75,000.'" *Washington Nat'l Ins. Co. v. OBEX Grp. LLC*, 958 F.3d 126, 133 (2d Cir. 2020) (quoting 28 U.S.C. § 1332(a)). "A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount." *Sec. Plans, Inc. v. CUNA Mut. Ins. Soc.*, 769 F.3d 807, 814 n.5 (2d Cir. 2014) (citation omitted).

"When a plaintiff invokes federal-court jurisdiction, the plaintiff's amount-in-controversy allegation is accepted if made in good faith." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014). The plaintiff's "burden is hardly onerous," because there is "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Sec. Plans*, 769 F.3d at 814 n.5 (citation omitted). To overcome this presumption, the party challenging jurisdiction must demonstrate "to a legal certainty that the amount recoverable does not meet the jurisdictional threshold." *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (citation and quotations omitted). "[W]here the damages sought are uncertain, the doubt should be resolved in favor of the claimant's pleadings." *Turban v. Bar Giacosa Corp.*, No. 19-CV-1138 (JMF), 2019 WL 3495947, at *2 (S.D.N.Y. Aug. 1, 2019) (brackets omitted) (quoting *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 785 (2d Cir. 1994)).

        2.    <u>Supplemental Jurisdiction</u>

When a district court has original jurisdiction over claims in a case, it "shall have supplemental jurisdiction over all other claims that are so related to claims in the action . . . that

7

they form part of the same case or controversy under Article III." *F5 Capital v. Pappas*, 856 F.3d 61, 77 (2d Cir. 2017) (alteration in original) (quoting 28 U.S.C. § 1367(a)).  Claims are "part of the same case or controversy if they derive from a common nucleus of operative fact.'" *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011) (citation and quotations omitted).

### B. Defendants' Counterclaim Adequately Alleges Subject Matter Jurisdiction

Plaintiffs have not overcome the presumption that Defendants' counterclaim meets the amount in controversy.  While the TAA merely alleges that damages exceed $75,000, Plaintiff has not shown to a "legal certainty" that Defendants' damages are below that amount.  *Scherer*, 347 F.3d at 397.

In any event, even if the Court lacks diversity jurisdiction over the counterclaim, it retains supplemental jurisdiction.  The counterclaim for tortious interference with business relations involves the question of whether Plaintiff has validly asserted infringement of its patents or, as Defendants contend, used the prospect of an infringement suit to threaten Defendants' business partners.  (TAA, Dkt. 24, ¶ 128 (alleging that Plaintiffs threatened suit, but did not serve the complaint out of fear the court would find "clear evidence of non-infringement of any of the patents-in-suit").)  The question of the patents' validity therefore provides the "common nucleus of operative fact" essential to the determination of both Plaintiffs' claims in this suit and Defendants' counterclaim.  *See Shahriar*, 659 F.3d at 245; *see also Godinger Silver Art Ltd. v. Hirschkorn*, 433 F. Supp. 3d 417, 424 (E.D.N.Y. 2019) (retaining supplemental jurisdiction over a tortious interference claim despite resolution of patent claims by stipulation); *Grupke v. Linda Lori Sportswear, Inc.*, 174 F.R.D. 15, 17–18 (E.D.N.Y. 1997) (finding a tortious interference counterclaim alleging that the plaintiffs "made false and malicious statements to defendants'

8

customers" to be a compulsory counterclaim to a copyright infringement suit because the counterclaim posed the "same factual question [as the] plaintiffs' complaint").

The Court thus finds that, at a minimum, it may exercise supplemental jurisdiction over Defendants' tortious interference counterclaim.

**II.     Preemption**

Plaintiff contends that even if the Court has subject matter jurisdiction, Defendants' tortious interference claim is preempted by federal patent law.

**A.     Legal Standard**

Federal Circuit law applies to the question of "whether state-law tort claims are preempted by federal patent law." *Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254, 1260 (Fed. Cir. 2008); *see also Godinger Silver Art Ltd. v. Hirschkorn*, 433 F. Supp. 3d 417, 424 (E.D.N.Y. 2019) (applying Federal Circuit law to the preemption issue). "Federal patent law [] preempts state-law tort liability when a patentee in good faith communicates allegations of infringement of its patent." *Dominant Semiconductors*, 524 F.3d at 1260 (citation omitted). "The law recognizes a presumption that the assertion of a duly granted patent is made in good faith; this presumption is overcome only by affirmative evidence of bad faith." *Golan v. Pingel Enter., Inc.*, 310 F.3d 1360, 1371 (Fed. Cir. 2002) (citations omitted). "As a result, bad faith must be alleged and ultimately proven, even if bad faith is not otherwise an element of the tort claim." *Dominant Semiconductors*, 524 F.3d at 1260 (citation and quotations omitted).

"Bad faith includes separate objective and subjective components." *Id.* (citation omitted). "[U]nder the objective prong," the claimant must show that the patentee has "pursu[ed] [] claims so baseless that no reasonable litigant could realistically expect to secure favorable relief." *Id.* at 1261 (quoting *Pro. Real Estate Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 62 (1993)). Thus, "the bad faith standard [] cannot be satisfied in the absence of a showing that the

9

claims asserted were objectively baseless,"—*i.e.*, "that no reasonable litigant could reasonably expect success on the merits." *Id.* at 1260 (citations and quotations omitted). Under the subjective prong, a claimant must show that the "lack of objective foundation for the claim was either known [to the patentee] or so obvious that it should have been known." *Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302, 1310 (Fed. Cir. 2013) (citation and quotations omitted).

### B.   Federal Patent Law Preempts Defendants' Counterclaim

Defendants make essentially two arguments for bad faith. First, Defendants contend that Plaintiff acted in bad faith by not serving the Complaint for over two months, and instead using it to "threaten and discourage customers of the Defendants." (Def. Rep., Dkt. 19, at 1.) Second, Defendants argue that Plaintiff "knew or should have known" that Defendants were not infringing on its patents, and that "Plaintiff's Letter reveals that Plaintiff knew that there was no patent infringement." (Def. Supp., Dkt. 27, at 3–5.)

Defendants' first argument fails. Plaintiff served the Complaint before the 90-day deadline established in Federal Rule of Civil Procedure 4(m). *See Kogan v. Facebook, Inc.*, 334 F.R.D. 393, 398 (S.D.N.Y. 2020) (citing Fed. R. Civ. P. 4(m)). Although Plaintiff publicized its infringement allegations in the interim, a patentee is, as noted, entitled to "communicate[] allegations of infringement of its patent," so long as the communication is made in good faith. *Dominant Semiconductors*, 524 F.3d at 1260; *see also Golan*, 310 F.3d at 1371 ("[P]atentees . . . are allowed to make representations that turn out to be inaccurate provided they make them in good faith."). That Plaintiff delayed serving the Complaint and, meanwhile, publicized its infringement allegations does not, alone, overcome the presumption of good faith.

Defendants' second argument also fails. Even if Plaintiff ultimately fails to prove infringement, Defendants have not established that Plaintiff's infringement claim is "so baseless that no reasonable litigant could realistically expect to secure favorable relief," *Dominant*

10

*Semiconductors*, 524 F.3d at 1261, let alone that *Plaintiff knew* that the "infringement allegations were so unreasonable as to be objectively baseless," *Matthews Int'l Corp. v. Biosafe Eng'g, LLC*, 695 F.3d 1322, 1332 (Fed. Cir. 2012), or that this was "so obvious that it should have been known," *Kilopass*, 738 F.3d at 1310. Rather, Defendants merely point to the letters they sent to Plaintiff outlining their substantive noninfringement arguments. (*See* TAA, Dkt. 24, ¶ 119; Dkt. 24-1; Dkt. 24-3; Def. Supp., Dkt. 27, at 3–5.) As the extensive claim construction litigation before this Court has since shown, these theories turn on a detailed parsing of the claim terms in the relevant patents. Even though *Defendants* believe that their device sufficiently differs from Plaintiff's patents, and although they explained this belief to Plaintiff, this does not establish that *Plaintiff* believed—or should have known—that the RadCad does not infringe. *Cf. Godinger*, 433 F. Supp. 3d at 425 ("Here, plaintiffs' allegations fall woefully short. They allege only that they provided [defendant's] counsel with 'prior art,' which *they* believed rendered the [disputed] patent invalid, and that [defendant] subsequently 'made wrongful and baseless claims.' This merely relates plaintiffs' belief and fails to plausibly touch on [defendant's] subjective belief after, presumably, being shown the prior art by his counsel; for instance, that he then believed his patents were invalid or his claims of patent infringement were objectively baseless." (citation and alterations omitted)).

Accordingly, because Defendants fail to overcome the presumption that Plaintiffs have made good faith assertions of their duly granted patents, Defendants' tortious interference counterclaim is preempted by federal patent law and must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' counterclaim for tortious interference is dismissed as preempted. Because the Court decides the issue on preemption grounds, it need not reach the question of whether Defendants have stated a claim for tortious interference on the merits.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 23, 2021
      Brooklyn, New York