**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| TOOLS AVIATION, LLC<br>Plaintiff,<br><br>v.<br><br>DIGITAL PAVILION ELECTRONICS LLC, BROOKLYN LABS LLC, and FIREMALL LLC,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **CIVIL ACTION NO.:**<br>**1:20-cv-02651 (PKC)(VMS)** |

**PLAINTIFF TOOLS AVIATION, LLC'S MOTION TO STRIKE DEFEDENTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT AS WELL AS THEIR REPLY LOCAL RULE 56.1 STATEMENT**

**TABLE OF CONTENTS**


I. INTRODUCTION ........................................................................ 1
II. DEFENDANTS' REPLY BRIEF SHOULD BE STRICKEN ........................................ 2
A. Defendants Withheld Their Non-Infringement Arguments In Discovery .................. 2
B. Withholding Defenses Until The Reply Brief Was Deliberate .......................... 4
C. Withholding Non-Infringement Positions Until Reply is Sanctionable ................. 5
D. Defendants' Reply Brief Exceeds the Court's Page Limit ............................. 5
E. Defendants' Reply Filings Should be Stricken For Relying on New Arguments and Evidence ........................................................................ 6
1. Defendants Admitted the Removable Bottom is a Rigid Structure ....................... 8
a) Withdrawing the admission would be prejudicial to Plaintiff ........................ 9
2. The "*Removable Bottom Is Not Rigid*" Argument Should be Stricken .................. 11
a) The "*Removable Bottom Is Not Rigid*" Argument is Improper on Reply ................ 11
b) The "*Removable Bottom Is Not Rigid*" Argument is Deficient to Show Non-Infringement ........................................................................ 12
(1) The Peterson Report Shows the Removable Bottom is Rigid .......................... 12
(2) Defendants' Claim Construction of "Rigid" is Fatally Flawed ....................... 12
(3) The Images of the Removable Bottom Are Not Material .............................. 15
3. The "*Removable Bottom Does Not Prevent*" Argument Should be Stricken ............. 16
a) The New "*Removable Bottom Does Not Prevent*" Argument is Improper on Reply ........................................................................ 17
b) The "*Removable Bottom Does Not Prevent*" Argument is Deficient to Show Non-Infringement ........................................................................ 18
4. The New Argument that "'*Snugly' Applies to All Asserted Claims*" is Improper on Reply ........................................................................ 18
5. New Arguments to Strike the Peterson Report are Improper on Reply ................. 20
III. DEFENDANTS REPLY 56.1 STATEMENT SHOULD BE STRICKEN ................................ 20
A. Defendants' Reply 56.1 Statement Cannot Be a Response to Plaintiff's 56.1 Statement in Support of Plaintiff's Summary Judgment Motion ........................... 21
B. Defendants' Reply 56.1 Statement is Procedurally Inappropriate ..................... 22
C. The Reply 56.1 Statement Responses are Inappropriate Under Rule 56.1 ............... 24
IV. CONCLUSION .......................................................................... 24

**TABLE OF AUTHORITIES**

Page(s)

Cases

*C.R. Bard, Inc. v. M3 Systems, Inc.*,
157 F.3d 1340 (Fed. Cir. 1998) ........ 3

*Donovan v. Carls Drug Co.*,
703 F.2d 650 (2d Cir. 1983) ........ 9

*Ernst Haas Studio, Inc. v. Palm Press, Inc.*,
164 F.3d 110 (2d Cir. 2000) ........ 6

*G.S. v. Pleasantville Union Free Sch. Dist.*,
2020 WL 4586895 (S.D.N.Y. Aug. 10, 2020) ........ 22

*Grace Instrument Indus. v. Chandler Instruments Co.*,
57 F.4th 1001 (Fed. Cir. 2023) ........ 14

*Holtz v. Rockefeller & Co., Inc.*,
258 F.3d 62 (2d Cir. 2001) ........ 24

*Julian v. MetLife, Inc.*,
2021 U.S. Dist. LEXIS 164910 (S.D.N.Y. 2021) ........ 6, 23, 24

*Kansas City Power & Light Co. v. United States*,
132 Fed. Cl. 28 (2017) ........ 8

*Knipe v. Skinner*,
999 F.2d 708 (2d Cir. 1993) ........ 6

*Leier v. Lincoln Limousine Brokerage, Inc.*,
2017 US Dist LEXIS 93142 (E.D.N.Y. 2017) ........ 9, 10

*Madorskaya v. Frontline Asset Strategies*, LLC,
2021 U.S. Dist. LEXIS 164995 (E.D.N.Y. 2021) ........ 6, 15

*Major League Baseball Props., Inc. v. Salvino, Inc.*,
542 F.3d 290 (2d Cir. 2008) ........ 21

*Monaghan v. Aeroflot Russian Airlines*,
2018 WL 3682482 (E.D.N.Y. Aug. 2, 2018) ........ 6, 15

*Omnipoint Comm'ns, Inc. v. City of White Plains*,
175 F.Supp. 2d 696 (S.D.N.Y. 2001) ........ 11

*Omnipoint Comm'ns, Inc. v. City of White Plains*,
430 F.3d 529 (2d Cir. 2005) ........................................ 11

*One-E-Way, Inc. v. Apple Inc.*,
22-2020 (Fed. Cir. Aug. 14, 2023) ........................................ 13

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ........................................ 13, 14

*Profectus Tech. LLC v. Huawei Techs. Co.*,
823 F.3d 1375 (Fed. Cir. 2016) ........................................ 13

*Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.*,
687 F. Supp. 2d 381 (S.D.N.Y. 2010) ........................................ 6, 15

*Sanders v. City of New York*,
2021 U.S. Dist. LEXIS 113239 (E.D.N.Y. 2021) ........................................ 24

*Schriber Co. v. Cleveland Trust Co.*,
305 U.S. 47 (1938) ........................................ 14

*Seabed Geosolutions (US) Inc. v. Magseis FF LLC*,
8 F.4th 1285 (Fed. Cir. 2021) ........................................ 14

*Symbol Techs., Inc. v. Opticon, Inc.*,
935 F.2d. 1569 (Fed. Cir. 1991) ........................................ 20

*Thompson v. Spota*,
2018 WL 6163301 (E.D.N.Y. Aug. 23, 2018) ........................................ 23

*Thompson v. Spota*,
2018 WL 4771901 (Sept. 30, 2018) ........................................ 23

*Zubulake v. UBS Warburg LLC*,
231 F.R.D. 159 (S.D.N.Y. 2005) ........................................ 11

<u>Rules</u>

*FRCP 30* ........................................ 18

*FRCP 36* ........................................ *passim*

*RCP 37* ........................................ 5

*Local Civil Rule 56.1* ........................................ *passim*

*Local Patent Rule 7* ........................................ 3

## I. INTRODUCTION

Plaintiff Tools Aviation LLC ("Tools Aviation" or "Plaintiff") hereby sets forth its memorandum of law in support of its motion for an order striking Defendants' Reply to Plaintiff's Opposition To Defendants' Motion for Summary Judgment (ECF 84) ("Defendants' Reply Brief") as well as the document titled "Defendants' Response to Plaintiff's New Asserted Material Facts Pursuant to Local Civil Rule 56.1 in Support of Plaintiff's Motion for Summary Judgment" (ECF 84-1) ("Defendants' Reply 56.1 Statement"), and for such other relief this Court deems just and proper, including awarding Plaintiff its fees for preparing and filing this motion under the Court's inherent powers. Alternatively, if the Court decides not to strike these filings, Plaintiff should be granted leave to reopen fact and expert discovery on Defendants newly presented non-infringement arguments and to refile its summary judgment filings at Defendants' expense. Plaintiff also respectfully requests that the Court also consider the present motion under Rule 37.

Defendants' Reply Brief should be stricken because (1) it includes arguments withheld during discovery and never previously raised, (2) that are improper to be raised in a reply brief, (3) it incorporates by reference improper argument put forth in Defendants' Reply 56.1 Statement in order to circumvent the thirteen (13) pages limit the Court Ordered for Defendants' Reply Brief. (See July 20, 2023 Text Order); and (4) it requires, at least with respect to the "rigid structure" argument, that Defendants move for and be granted an Order to withdraw Defendants' admission in response to Plaintiff's Request for Admissions.

Defendants' Reply 56.1 Statement should be stricken for the same reasons as the Reply Brief, and additionally because (1) the Federal and Local Rules do not provide for a reply 56.1 statement, and (2) Defendants' Reply 56.1 Statement is replete with attorney argument and long narrative, and legal conclusion that are improper in a 56.1 statement. Moreover, it is unclear from Defendants' filings whether ECF 84-1 is intended to be a response to Plaintiff's Rule 56.1

Statement filed in support of Plaintiff's motion for summary judgment (ECF 82-3)("Plaintiff's 56.1 Statement in Support of SJ"), or a reply to Plaintiff's Rule 56.1 Statement in filed opposition to Defendants' Rule 56.1 Statement found on page six (6) of Defendants' motion for summary judgment (ECF 80-1), filed by Plaintiff at ECF 83-1 ("Plaintiff's 56.1 Statement in Response to Defendants' 56.1 Statement"), or to both. Under any interpretation, ECF 84-1 should be disregarded in its entirety, and importantly, Defendants must not be permitted to use Defendants' Reply 56.1 Statement as a second chance to respond to Plaintiff's 56.1 Statement in Support of SJ.

**II. DEFENDANTS' REPLY BRIEF SHOULD BE STRICKEN**

**A. Defendants Withheld Their Non-Infringement Arguments In Discovery**

Plaintiff served its Interrogatory No. 7 to Defendants which requested Defendants' non-infringement positions. See ECF 83-1, p 9, No. 23 (ECF 83-17, p. 4). Defendants responded that "[t]he employees and contract workers for the Defendants are not capable of providing responses to No. 7." ECF 83-17, p. 5. Here Defendants did not withhold a response, but rather admitted that they had no such defenses. *Id*. However, the response to Interrogatory No. 7 continued, in ominous foreshadowing of this present dispute, that "[i]t is expected that a response to this interrogatory will become known to Plaintiff after Discovery is completed." *Id*.

Because of Defendants' threat that new defenses will become known after discovery, Plaintiff pressed Defendants for any withheld information. In a June 27, 2022, letter from Plaintiff's counsel, Michael Gabriel, to Defendants' counsel, David Fink, Plaintiff explained that withholding defenses until after discovery closes "undermines the entire purpose of discovery under the Federal Rules." Gabriel letter to Fink, p. 1, attached hereto as Exhibit A. Plaintiff made clear that it cannot "be denied discovery on [ ] fundamental issues of this patent litigation lawsuit, only to be forced to respond to novel theories and arguments after the close of discovery or even at trial" and requested that the response to interrogatory No. 7 be supplemented. *Id*. at pp 1-2.

Plaintiff then warned that Defendants' refusal to respond should result in the exclusion of Defendants' reliance on the defenses of non-infringement. *Id*. at p. 2. Defendants thereafter refused to supplement their responses. Defendants provided no non-infringement defenses during the entirety of the discovery period beyond pre-suit correspondence with counsel and scattered attorney arguments in various prior pleadings.

After fact discovery closed, Plaintiff prepared an expert disclosure to establish Defendants' infringement and attempted to address whatever it could deduce Defendants' non-infringement defenses from the meager record offered. Further demonstrating Defendants' refusal to disclose their non-infringement positions, Defendants provided no rebuttal expert disclosure.

The extent of Defendants' attorney argument based non-infringement disclosures, as indicated by Defendants themselves, are found in Defendants' Third Amended Answer, Ex. C and D (ECF 24) and Defendants' Invalidity Contentions pursuant to Local Patent Rule 7. See Ex. M (81-1). See ECF 84-1, pp. 5-6, Statement 20). Even a cursory analysis of Defendants' January 13, 2021, Invalidity Contentions demonstrate the weakness and limited scope of Defendants' non-infringement positions.[1] Defendants rely on a non-infringement position that requires the "frame" of the asserted claims to be a "unitary molded piece." ECF 81-1, p. 6. However, this argument was explicitly rendered moot by the Court in its Order on Claim Construction. ECF 52, p, 24, n. 9. Defendants also relied on a non-infringement position that the "protrusion" in Claim 24 of the '252 Patent must "press against each battery in each compartment to retain the batteries." ECF 81-1, p.

[1] Similarly, even a cursory review of Defendants' Invalidity Contention shows the unreliability of the whole document. The basis of the contention that Plaintiff committed patent misuse is without merit and is in fact directly contrary to Federal Circuit law. The entire flawed argument is based on the allegation of a bad-faith infringement assertion by Plaintiff. However, the Federal Circuit has made clear that "[i]It is not patent misuse to bring suit to enforce patent rights not fraudulently obtained." See *C.R. Bard, Inc. v. M3 Systems, Inc*., 157 F.3d 1340, 1373 (Fed. Cir. 1998). The Court has already ruled in its September 23, 2021 Order dismissing Defendants' counterclaim for tortious interference that "Defendants fail to overcome the presumption that Plaintiffs have made good faith assertions of their duly granted patents." ECF 51, p. 11.

6. Once again, the Court's claim construction ruling left this argument without merit too. ECF 52, p, 30. It cannot be disputed that nowhere during discovery did Defendants ever disclose non-infringement positions even remotely similar to the three new arguments first raised in Defendants' Reply Brief.

### B. Withholding Defenses Until The Reply Brief Was Deliberate

Given the futility of Defendants' positions and anticipating that Defendants would attempt to raise new non-infringement arguments in their motion for summary judgment, Plaintiff highlighted this concern in its opening brief for summary judgment. See ECF 82-2 at pp 18-19. In fact, Plaintiff dedicated an entire section of its summary judgment brief to argue that if Defendants attempt to raise new non-infringement defenses they should be deemed waived, and Defendants should be precluded for failure to disclose the bases for these defenses during discovery." *Id*. In response, Defendants audaciously offered that "if Plaintiff were sincere in needing Defendants' arguments against infringement, then Plaintiff should have filed a Motion to Compel." ECF 81, p. 21. This retort ignores the fact however, that Defendants did not withhold a response to be compelled, but critically instead responded that they were incapable of providing non-infringement defenses. Unfortunately, this glib comment also demonstrates the cavalier attitude taken by Defendants to their discovery obligations throughout this litigation. See, *e.g.,* ECF 47, ECF 81-1.

Immediately following admonishing Plaintiff for not moving to compel, Defendants proceeded to purposefully raise new non-infringement position in Defendants' Reply Brief. Defendants should be precluded from relying on their improperly withheld non-infringement positions even in an opening summary judgment brief. It is a threshold issue whether Defendants' new non-infringement arguments were already waived prior to being raised in reply.

**C. Withholding Non-Infringement Positions Until Reply is Sanctionable**

Plaintiff has demonstrated that Defendants' decision to raise new arguments on reply brief was willful and thus subject to the requested sanctions under the Court's inherent powers. To support this motion to strike Defendants' Reply Brief, Plaintiff establishes that the non-infringement arguments first raised on reply were deliberately withheld from at least Defendants' response to Interrogatory No. 7. This is a clear violation of Rule 37(d). Because discovery was closed and dispositive motions had already been briefed before Defendants' violation of Rule 37(d) was known to Plaintiff, the normal procedures of a discovery motion for a motion to compel or under Rule 37 whereby the parties should first attempt to resolve the dispute appear inapplicable here. However, having already fully outlined the violation as part of the present motion, Plaintiff respectfully requests that the Court also consider the present motion under Rule 37. Otherwise, Plaintiff respectfully reserves its right to seek further relief and appropriate sanctions pursuant to Rule 37(d).

**D. Defendants' Reply Brief Exceeds the Court's Page Limit**

Another threshold issue is whether Defendants' Reply Brief should be stricken because Defendants placed arguments in Defendants' Reply 56.1 Statement to circumvent the Ordered page limit. Defendants' Reply Brief is thirteen (13) pages long, the exact number of pages the Court extended to the page limit to for reply briefs[2]**.** Defendants also incorporated arguments from their Reply 56.1 Statement as part of their Reply Brief,. See ECF 84, p. 6. The section of the reply purportedly to be incorporated, Defendants' "response to Section 50," is a two (2) full pages long section of Defendants' Reply 56.1 Statement that includes attorney argument and narrative and legal conclusions as well as purported new evidence that was deliberately omitted from the

[2] Defendants Reply Brief (ECF 84) as filed was a 31-page document which appears to inadvertently include additional pages following the Certificate of Service on page 16 of the document as a result of a clerical error.

thirteen-page Reply Brief. As a result, Defendants' Reply Brief is in excess of the Court's already generously extended page limit if Defendants' tactic was permitted. This is not mere oversight as Defendants specifically acknowledge the page limit in the Reply Brief See ECF 84, p. 2 Simply put, the page limit cannot be avoided by putting attorney argument in a Reply 56.1 Statement. Moreover, as discussed herein, attorney argument is improper in a Rule 56.1 statement and should appropriately be disregarded. See *Julian v. MetLife, Inc.,* 2021 U.S. Dist. LEXIS 164910 *16 (S.D.N.Y. 2021). Also, the Court has discretion to strike the brief in its entirety for ignore Court ordered page limits. *Kumaran v. 'at'l Futures 'ss'n*, 1:20-cv-3668-GHW, at *2 (S.D.N.Y. Jan. 25, 2022). For these reasons, the Court should strike Defendants' Reply Brief and Reply 56.1 Statement in their entirety, or in the alternative strike the portions incorporated from Defendants' Reply 56.1 Statement that exceeded the page limit.

**E. Defendants' Reply Filings Should be Stricken For Relying on New Arguments and Evidence**

Further to the discussions above, numerous of Defendants' arguments and purported evidence for non-infringement, and to strike the Peterson Report, were disclosed for the first time on reply. It is well-established that "new arguments may not be made in a reply brief." *Ernst Haas Studio, Inc. v. Palm Press, Inc.,* 164 F.3d 110, 112 (2d Cir. 2000) (citing *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993)). Additionally, "[i]t is plainly improper to submit on reply evidentiary information that was available to the moving party at the time that it filed its motion and that is necessary in order for that party to meet its burden." *Monaghan v. Aeroflot Russian Airlines,* No. 16-CV-3528 (ERK) (PK), 2018 U.S. Dist. LEXIS 129964, 2018 WL 3682482, at *4 (E.D.N.Y. Aug. 2, 2018) (quoting *Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.,* 687 F. Supp. 2d 381, 387 (S.D.N.Y. 2010)); see also *Madorskaya v. Frontline Asset Strategies, LLC,* 2021 U.S. Dist. LEXIS 164995 (E.D.N.Y. 2021). Defendants blatantly violated both these principles in their reply.

With respect to the portions of the Reply Brief and Reply 56.1 Statement directed to Defendants' arguments for non-infringement of the "bottom wall" claims, Defendants' non-infringement positions are based entirely on three completely new arguments. Defendants argue for the first time "that batteries can be removed from either side of the RadCad caddy even with the 'removable bottom', unlike the 'bottom wall' which prevents batteries from being removed past the 'bottom wall'." ECF 84, p. 1. Defendants also argue for the first time "that the 'removable bottom' of the RadCad caddy is flexible, not rigid, unlike the 'bottom wall' of the "bottom wall claims." *Id*. Further, despite not previously raising this argument in discovery or their opening brief for summary judgement, Defendants argue in their reply brief that the claim limitation that a battery be held "snugly" within a compartment, which appears in only one of the asserted claims, should now be considered a required limitation of each asserted claim. ECF 84-1, p. 3 ("The most dramatic change urged by Plaintiff is to admit that the AA battery must fit snugly in the RadCad caddy for infringement of any asserted claim."). Defendants admit that new issues are raised in their Reply Brief but quixotically place the blame on Plaintiff based on purported "new infringement arguments" found in Dr. Peterson's January 6, 2023, expert report. ECF 84, pp. 2, 4.

This is a baldly insufficient basis to attempt to raise new arguments in a reply brief. First, Dr. Peterson's expert report was served on Defendants on January 6, 2023, and Defendants took his deposition on February 9, 2023. There was no new information to be gleaned from Dr. Peterson or his expert report that was not already available to Defendants well prior to the filing of their opening summary judgment brief. Further, despite Defendants' insistences, there were no new infringement arguments presented by Plaintiff in its Opposition brief to Defendants' motion for summary judgment (ECF 83, pp 2-8).

Defendants also presented new arguments critical of Dr. Peterson's report for the first time in Defendants' Reply Brief. These new arguments are also not in response to Plaintiff's opposition to Defendants' opening brief (ECF 83, pp 14-20), but in fact were arguments available to Defendants through the entire relevant time period. Defendants should not be able to attack Dr. Peterson's credibility and character in this fashion, especially in a reply brief, denying Plaintiff the opportunity to respond.

1. Defendants Admitted the Removable Bottom is a Rigid Structure

Predicating Defendants' argument that the removable bottom is not a rigid structure is a withdrawal of Defendants' admission that it is in fact a rigid structure. In Response to RFA 86, the Defendants admitted that the removable bottom is rigid: "86. Admit that the "removable bottom" is a rigid structure. RESPONSE: Objection. This calls for a legal opinion and it is inappropriate for a request for Admissions. As best understood, admitted." ECF 82-24; see also ECF 82-4 (Gabriel Decl.) ¶ 20, Ex 18, p. 33, RFA 86. To date, Defendants have not moved to withdraw their admission. It is simply too late for the Defendants to be permitted to withdraw this admission. This is a concise request and a direct admission. Despite Defendants' protestations, "a request for admission is not objectionable even if it requires opinions or conclusions of law, as long as the legal conclusions relate to the facts of the case." *Kansas City Power & Light Co. v. United States,* 132 Fed. Cl. 28, 34 (2017).

It is a threshold issue whether Defendants should be permitted to withdraw their admission. They should not. As the comments to the 1970 Amendments to FRCP 36 make clear, "Unless the party securing an admission can depend on its binding effect, he cannot safely avoid the expense of preparing to prove the very matters on which he has secured the admission, and the purpose of the rule is defeated." A matter admitted under Rule 36 "is conclusively established unless the court, on motion, permits the admission to be withdrawn or amend"d." *FRCP 36(b)*. The decision

whether to allow a party to withdraw or amend admissions under Rule 36(b) is in the district co'rt's discretion. *Leier v. Lincoln Limousine Brokerage, Inc*. 2017 US Dist LEXIS 93142, *8 (E.D.N.Y. 2017) (quoting *Donovan v. Carls Drug Co.*, 703 F.2d 650, 651-52 (2d Cir. 1983)). Under Rule 36(b), "the court may permit withdrawal or amendment [of admissions] if [1] it would promote the presentation of the merits of the action and [2] if the court is not persuaded that it would prejudice the [party that served the requests for admission] in maintaining or defending the action on the merits." *FRCP 36(b).* The Second Circuit has clarified that, "the [district] court has the power to [excuse a party from its admissions] only when (1) the presentation of the merits will be aided *and* (2) no prejudice to the party obtaining the admission will result." *Id*. (quoting *Donovan*, 703 F.2d at 652). Furthermore, "[b]ecause the language of the Rule is permissive, the court is not required to [excuse a party from its admission] even if both the merits and prejudice issues cut in favor of the party seeking [to withdraw the admission]." *Donovan*, 703 F.2d at 652.

a) Withdrawing the admission would be prejudicial to Plaintiff.

Withdrawing the admission would be prejudicial to Plaintiff. This admission was made prior to Plaintiff taking Defendants' corporate deposition and prior to the close of fact discovery. Plaintiff prepared its case in chief of infringement based on this admission. Plaintiff decided what issues were outstanding, which witnesses to depose, and what discovery deficiencies needed to be pursued as fact discovery was reaching its conclusion based what admissions Defendants had made, including whether Plaintiff had to prove whether both the structural and functional limitation of the bottom wall were found in the RadCad caddy. Similarly, based on this admission by Defendants, Plaintiff completed and served Dr. Peterson's technical and infringement report on Defendants on January 6, 2023 with expert discovery closing on March 10, 2023.

It was Dr. Peterson's unrebutted expert opinion that the removable bottom was a rigid structure. However, were it not already admitted and still in controversy, Dr. Peterson certainly

could have provided a detailed analysis and/or testing further establishing the removable bottom's rigidity. Defendants then failed to present a rebuttal expert disclosure on "rigid structure" or any other issue. Defendants also did not once ask a single question about the removable bottom being a rigid structure during Defendants' deposition of Dr. Peterson. As such, Dr. Peterson was denied the chance to opine further on whether the removable bottom was a rigid structure as part of expert discovery. The counterfactuals of how fact and expert discovery would have otherwise proceeded are innumerable.

The parties served their respective summary judgment motions and Rule 56.1 statements in support on June 14, 2023. Defendants never addressed whether the removable bottom was a rigid structure in their briefing. The parties served their respective opposition briefs on July 17, 2023. Notably, as it was already admitted and not raised in Defendants' opening summary judgment brief, Plaintiff had no reason to address whether the removable bottom is a rigid structure in is opposition. Importantly, Defendants' opposition brief did not discuss the issue of whether the removable bottom is a rigid structure either. It was only on August 7, 2023, when the parties served and filed their respective reply briefs, that Defendants raised a non-infringement defense that the removable bottom is not a rigid structure. Defendants purposely waited until Plaintiff had no opportunity to respond.

If the Court were to allow Defendants an undeserving exception to Rule 36, having already extensively relied on Defendants' admission, Plaintiff would be forced to seek discovery on the issue of the rigid removable bottom, to conduct additional expert and technical analysis and proceed through expert discovery once again, and would certainly need to re-brief its motion for summary judgment. See *Leier v. Lincoln Limousine Brokerage, Inc.* 2017 US Dist LEXIS 93142 *16 (E.D.N.Y. 2017) (Withdrawal of party's admission denied given that discovery was already

closed, additional discovery by opposing party would be required, dispositive motions were just beginning, and the entire litigation would be delayed.). This case has been pending for over three year, in large part due to Defendants' intransience in meeting its discovery obligations. Further significant delay in litigation and the need to expend additional resources are themselves the kind of 'prejudice" that weighs against withdrawal of admissions. *Id*. at *16, citing *Zubulake v. UBS Warburg LLC,* 231 F.R.D. 159, 161 (S.D.N.Y. 2005)(citations omitted). Even if reopening discovery were appropriately Ordered to be at Defendants' expense, it would be extremely prejudicial to Plaintiff at this late stage of the litigation.

As to the second prong, as shown below, even with a withdrawn admission, Defendants have failed to show that the removable bottom is not rigid and thus a withdrawal would fail to aid the presentation of the merits of the action. Regardless, Defendants' decision to wait until the reply brief to even raise this issue leaves Defendants undeserving of an exception to Rule 36.

2. The "*Removable Bottom Is Not Rigid*" Argument Should be Stricken

Defendants improperly raise for the first time in their Reply Brief that the "removable bottom" of the RadCad caddy is not "rigid," and thus cannot meet the limitation of a bottom wall.

a) The "*Removable Bottom Is Not Rigid*" Argument is Improper on Reply

This is an exceedingly notable repudiation of Defendants' prior position regarding whether the removable bottom is a rigid structure as it was not only admitted in response to RFA No. 86, but it also was not disputed, and thus deemed admitted, in response to Material Fact No. 97 on July 17, 2023. See (See ECF 82-3, p. 24 and ECF 81, pp. 9-13. This is precisely why this District adopted Local Civil Rule 56.1(d), namely "to supply the Courts with an accurate factual record" and "to prohibit parties from taking…misleading and unfair 'shortcuts')…" *Omnipoint Comm'ns, Inc. v. City of White Plains*, 175 F.Supp. 2d 697, 700 (S.D.N.Y. 2001), *rev'd on other grounds*, 430 F.3d 529 (2d Cir. 2005). Defendants are now taking a position contrary to multiple prior

admissions that the removable bottom is a rigid structure for the first time in its Reply Brief and the argument should be stricken.

b) The "*Removable Bottom Is Not Rigid*" Argument is Deficient to Show Non-Infringement

Defendants argue in the Reply Brief that the removable bottom is not a rigid structure because "[t]he 'removable bottom' clearly bends as shown in the Expert Report, Ex. D, Fig. 1.4B and some reported simple experiments." ECF 84, p 6. Not only is Defendants' argument that the removable bottom can bend so therefore it is not a rigid structure too late, it is also deficient on its face. The very evidence relied upon by Defendants, Dr. Peterson's tests, proves the removable bottom is a rigid structure as taught by the asserted patents.

(1) The Peterson Report Shows the Removable Bottom is Rigid

Fig 1.4 of the Peterson Report illustrates the three testing scenarios conducted by Dr. Peterson: Fig 1.4A shows a battery pushed through the opening at the end of a compartment because the resiliently displaceable detents were flexed and displaced out of the way allowing the battery to pass through. Fig 1.4B shows a force of at least 20% more than the force applied in Fig 1.4A, with the resiliently displaceable detents flexed and displaced out of the way, but the rigid removable bottom remains in place partially closing the open end of the compartment and preventing the battery from passing through the opening of the compartment. Fig 1.4C shows an extreme force being applied to a battery and the removable bottom, rather than deflect out of the way, remains in place due to its rigidity, pops off as it detaches from the RadCad caddy.

(2) Defendants' Claim Construction of "Rigid" is Fatally Flawed

Critically, Defendants can only argue that the removable bottom *may bend* under a force on average twenty (20) times the force to remove a battery without a removable bottom attached. But even Defendants know that some "bending" is not the same and is insufficient to show that a

removable bottom is not a rigid structure. That is why Defendants direct the Court to its "response to Statement 50" in Defendants' Reply 56.1 Statement where "[t]his issue is addressed in detail."

In their "response to Statement 50" Defendants attempt to engage the Court in the exercise of construing the Court's own construction. (ECF 84-1, p. 10-11). Here again, Defendants' argument is untimely and deficient. Defendants attempt to rely on unauthenticated and hearsay extrinsic evidence from cherry-picked online dictionaries as support for it construction of the Court's construction of the claim term "bottom wall" as a "rigid structure" to mean "not bending." This would be an inappropriate method to analyze the Court's construction even if it were not in the form of a legal argument offered in a Reply 56.1 statement raised for the first time in support of a reply brief.

The Federal Circuit has shown that when conducting a claim construction analysis of the meaning of a claim construction, the Court should look to the term's "ordinary and customary meaning" *in view of the context of the claim, the specification, and the prosecution history,* just as it should do when first construing claim terms. See *One-E-Way, Inc. v. Apple Inc.*, 22-2020 (Fed. Cir. Aug. 14, 2023) (nonprecedential)(The Federal Circuit, citing *Phillips v. AWH Corp.,* 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (*en banc*), conducting a claim construction analysis of the meaning of a claim construction looked for the term's "ordinary and customary meaning" in view of the context of the claim, the specification, and the prosecution history.)

Therefore, the law on claim construction through the use of extrinsic evidence in the form of dictionary definition is well established. As is the case here, where the meaning of a claim term is clear from the intrinsic evidence, there is no reason to resort to extrinsic evidence. See *Profectus Tech. LLC v. Huawei Techs. Co.*, 823 F.3d 1375, 1380 (Fed. Cir. 2016)("Extrinsic evidence may not be used 'to contradict claim meaning that is unambiguous in light of the intrinsic

evidence.'"(quoting *Phillips*, 415 F.3d at 1324)); see also *Grace Instrument Indus. v. Chandler Instruments Co.*, 57 F.4th 1001, 1008 (Fed. Cir. 2023) quoting *Seabed Geosolutions (US) Inc. v. Magseis FF LLC*, 8 F.4th 1285, 1287 (Fed. Cir. 2021).")(Federal Circuit vacating a claim construction order that was based entirely on extrinsic evidence.). A court may only rely on dictionary definitions, "so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents." *Phillips* , 415 F.3d at 1317, 1322–23 (citation and internal quotation marks omitted).

Defendants have provided no reasoning for the Court to resort to dictionary definitions where the intrinsic evidence makes the meaning of the term clear. To the contrary, Defendants completely disregard Federal Circuit law in ignoring the intrinsic record and relying entirely on extrinsic evidence. This approach further serves to demonstrate the futility of Defendants' position.

It is evident the ordinary meaning of the term "rigid" in view of the "resiliently displaceable" detents of asserted claims does not mean "does not bend at all."[3] Likewise, the specifications further describe the "detents" as being "resiliently flexible outwardly to allow battery to be removed through the open end of each bay." US Patent No. 7,287,648, at col. 5:ll 50-52., attached as Exhibit B. "Since rigidity is a relative term, the characterization of the structure as rigid must be taken as emphasizing rigidity rather than its opposite, flexibility, with special reference to the conditions to be encountered in the operation of the [device]." *Schriber Co. v. Cleveland Trust Co.*, 305 U.S. 47, 58 (1938) ("The properties of any given material are many and diverse. The antithetical qualities of rigidity and flexibility of a structure are not absolute but relative; it may be more rigid than some and more flexible than others; too rigid for some purposes and too flexible for others."). Accordingly, if it must be construed, "rigid" should be construed in

[3] Despite reciting dictionary definitions, Defendants never actually propose a specific construction for the term "rigid." See ECF 84-1, pp. 10-11.

light of and in comparison to the explicit flexibility of the detents as taught by the asserted patents. And when viewed in combination with special reference to the conditions encountered in the operation of a battery caddy, it should be further construed in view of the bottom wall function of preventing a battery from falling out of a compartment. Regardless, there is no support in the intrinsic record for Defendants' proposed construction that the "rigid" means "not bending." It is without question that it does not mean that a removable bottom cannot bend even under extreme and usual force that is (1) well beyond what is necessary to "prevent a battery from falling" and (2) in manner outside how a battery caddy would ever be used not least of which because there is an open end at the opposite side of the removable bottom.

To the extent the Court allows Defendants to proceed with this argument that the removable bottom is not a rigid structure, Plaintiff respectfully requests the opportunity to provide additional briefing on this issue.

(3) The Images of the Removable Bottom Are Not Material

To further support their defective position on "rigid structure," Defendants include two images of Defendants manipulating a removable bottom while it is not attached to a RadCad caddy. (ECF 84-1, p. 11). First, this is exactly the type of new evidence that may not be made in a reply brief. *Madorskaya v. Frontline Asset Strategies*, LLC 2021 U.S. Dist. LEXIS 164995 (E.D.N.Y. 2021) (It is improper to submit new evidence in a reply that was available to the moving party at the time it filed its Summary Judgment Motion and that is necessary in order for that party to meet its burden.) *Monaghan v. Aeroflot Russian Airlines,* No. 16-CV-3528 (ERK) (PK), 2018 U.S. Dist. LEXIS 129964, 2018 WL 3682482, at *4 (E.D.N.Y. Aug. 2, 2018) (quoting *Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.,* 687 F. Supp. 2d 381, 387 (S.D.N.Y. 2010)). Defendants have had possession of their own product, the RadCad caddy, for all relevant times and could have conducted the same or any other experiment on the RadCad caddy at any time. Instead, they failed

to offer a rebuttal expert witness and Defendants attempt now to make new arguments for non-infringement for the first time on their reply brief.

Further, these two new images of the removable bottom are not just too late, they do not prove the point that they are asserted for. The two images of Defendants manipulating a removable bottom while not attached to a RadCad caddy are not even material to Plaintiff's infringement assertion. The accused product of the "bottom wall" claims is the RadCad caddy *with the removable bottom attached*. The images show Defendants using various means to show the removable bottom bending while it is *detached* from a RadCad Caddy. This argument has no bearing on the rigidity of the removable bottom while it is attached to a RadCad caddy and is secured at two ends to the molded plastic RadCad caddy frame.

For these reasons, Defendants' entire argument that the removable bottom is not a rigid structure because it bends should be stricken from Defendants' filings in reply.

3. The "*Removable Bottom Does Not Prevent*" Argument Should be Stricken

Plaintiff's contention has been unwaveringly consistent that the RadCad caddy infringes the "bottom wall" claims when the "removable bottom" of the RadCad caddy is attached. Defendants' non-infringement position, as provided in their opening summary judgment brief (ECF 80-1) appeared to be "that if the bottom detents of the RadCad caddy prevented the batteries from falling out before the 'Removable Bottom' was attached, then the detents will still prevent the batteries from falling out after the 'Removable Bottom' is removed." ECF 80-1, p. 24. Thus, Defendants previously argued, repeatedly and erroneously, that it is the detents rather than the removable bottom that prevent a battery from falling out: "The detents will still ultimately prevent a battery from falling out." (ECF 81-1, p. 25, item 6). The fallacy of this argument was addressed in detail in Plaintiff's opposition brief demonstrating how it is undisputable that the removable

bottom of the RadCad caddy prevents a battery from falling out of a battery compartment. (ECF 83, pp. 2-8).

a) The New "*Removable Bottom Does Not Prevent*" Argument is Improper on Reply

Defendants now introduce a completely new argument in Defendants' Reply Brief. Defendants argue that because Dr. Peterson demonstrated that "the ratio of the average force to push out a battery with the 'removable bottom' to without the 'removable body' was about 20 times the average….that the 'removable bottom' did not prevent a battery from being removed past the 'removable bottom'. That means the 'removable bottom' did not prevent a battery from falling out as in the case of the "bottom wall". ECF 84, pp 9-10. In essence Defendants have taken an entirely new position never offered in discovery or any prior briefing, "that batteries can be pushed out from either end even when the 'removable bottom' is attached."

There can be no question that this is a completely new argument, and an argument that was available to Defendants prior to their opening Summary Judgment motion. Even more egregiously, in presenting this argument in reply, Defendants abandoned their repeated position in their opening summary judgment brief that "the detents will still prevent the batteries from falling out after the 'Removable Bottom' is removed" (ECF 80-1, p. 24) and instead apparently argue that nothing in the RadCad caddy will prevent a battery from falling out of the RadCad caddy: "you need to push harder to move past the bottom detents and the 'removable bottom', but that is merely a matter of degree." ECF 84, p 5.

Defendants do not explain why a user would push a battery against a removable bottom with an unusually large force to pop off the removable bottom when the opposite end provides an opening meant for removing battery. The RadCad caddy is a simple two-part device designed and sold by Defendants. Defendants also do not explain what prevented Defendants from examining, testing, developing, and disclosing

this argument prior to Defendants' Opening Summary Judgment motion. Instead, Defendants willfully and improperly chose to wait until Defendants' Reply Brief to present the argument in a way to deny Plaintiff a response.

Moreover, not only is this new argument contrary to Defendants' position in their opening brief, but it is also directly contrary to the binding testimony of Defendants' Rule 30(b)(6) witness. Mitchel Berkowitz testified that if a removable bottom is attached to a RadCad caddy, a battery would be prevented from being removed from the side of a RadCad caddy with the removable bottom because the removable bottom is physically blocking the battery from coming out of that end. See ECF 83-1, ¶¶ 54-55, Ex 18 (Berkowitz Tr. 11/30/29) at 250:5-18). Plaintiff was entitled to rely on the testimony of Defendants' corporate representative as being the position of Defendants. Defendants cannot be allowed to simply disavow this testimony now.

b) The "*Removable Bottom Does Not Prevent*" Argument is Deficient to Show Non-Infringement

Finally, Defendants' new argument is not even material to Plaintiff's infringement assertion. The RadCad caddy accused of infringing the "bottom wall" claims has a *removable bottom attached*. Defendants' new argument requires the removable bottom to be forcibly removed from the RadCad caddy. "Eventually, the force on the 'removable bottom' results in the release of the 'removable bottom' from the caddy." ECF 84-1, p. 9. This argument has no bearing on the function of the removable bottom while attached to the RadCad caddy, which as construed is to at least partially close the bottom end of the compartment to prevent a battery from falling through the bottom end of the compartment.

For these reasons, Defendants' entire argument that "the removable bottom does not prevent a battery from falling out" should be stricken from Defendants' filings in reply.

4. The New Argument that "'*Snugly' Applies to All Asserted Claims*" is Improper on Reply

Defendants also argue in their reply brief that the claim limitation that a battery be held "snugly" within a compartment should now be considered a required limitation of each asserted claim. ECF 84-1, p. 3 ("The most dramatic change urged by Plaintiff is to admit that the AA battery must fit snugly in the RadCad caddy for infringement of any asserted claim."). Claim 1 of the '218 Patent is the only asserted claim where this limitation is found. This argument is simply too late for all the reasons discussed above regarding waiting until a reply brief to raise a new argument, including that Defendants never raised the argument that the "snugly" limitation should apply to each assert claim during discovery. For further support that this new argument is improper on reply, Plaintiff does not mention the words "snugly" to "snug" even once in its opposition brief. See ECF 83.

This argument by Defendants is particularly perplexing though because Defendants admitted in their opening brief that a battery should fit "preferably snugly" in a RadCad caddy compartment. ECF 80-1, p. 2. Defendants stated that "Statement 29" of its of its reply 56.1 statement was undisputed, this admitting that a RadCad caddy can "hold the AA battery snugly within the compartment." See ECF 83-1, p. 10 and 84-1, p. 7. Defendants are not even arguing that the RadCad does not meet the "snugly" limitation, yet Defendants still try to impose that limitation on each asserted claim.

Defendants assert that this new requirement for infringement is based on an "admission against interest" made by Plaintiff. ECF 84-1, p. 3. As part of its case for infringement, Plaintiff asserts that the RadCad caddy can "snugly" hold a battery, as required for infringement of Claim 1 of the '218 Patent. It is axiomatic therefore that it is Plaintiff's position that a battery can be held "snugly" in a RadCad caddy regardless of which claim is being analyzed. Nothing in this is an admission of any kind that a limitation from Claim 1 of the '218 Patent should be read into any other claim. Moreover, neither Plaintiff nor Defendants apparently found any support in the law

for this position. For these reasons, Defendants' entire argument that "Snugly" should be read into each asserted claim should be stricken from Defendants' filings in reply.

5. New Arguments to Strike the Peterson Report are Improper on Reply

Defendants raise a number of new attacks on the credibility and methodology of Dr. Peterson for the first time in Defendants' Reply Brief. This too is improper. Defendants make numerous new technical criticisms of Dr. Peterson and his expert report on pages 9-11 of Defendants' Reply Brief regarding the technical testing report on the RadCad caddy. None of these criticisms were raised in Defendants' opening motion to strike Dr. Peterson's report, even though there was no reason given to excuse delaying the criticisms until the Reply Brief. Further, Defendants deposed Dr. Peterson and could have interrogated him about these issues, Defendants chose not to raise these issues during deposition but now improperly attempt to shift the burden of explaining certain facts and assumption of the Peterson Report onto Plaintiff. Even if Plaintiff had the opportunity to reply, this burden shifting is improper. See *Symbol Techs., Inc. v. Opticon, Inc.*, 935 F. 2d. 1569, 1576 (Fed. Cir. 1991) ("The responsibility for challenging the factual underpinnings of the testimony fell squarely on [opposing counsel] during cross-examination." But not only did Defendants fail to question Dr. Peterson on these perceived concerns with his report, Defendants do not even cite to Dr. Peterson's deposition transcript in raising these issues for the first time on reply. Accordingly, Defendants' Reply Brief's portions concerning striking the Peterson Report should be stricken.

## III. DEFENDANTS REPLY 56.1 STATEMENT SHOULD BE STRICKEN

In addition to the reasons discussed above for striking Defendants' Reply Brief and Defendants' Reply 56.1 Statement, Defendants' Reply 56.1 Statement should be stricken for the following independent reasons as well.

**A. Defendants' Reply 56.1 Statement Cannot Be a Response to Plaintiff's 56.1 Statement in Support of Plaintiff's Summary Judgment Motion**

As an initial matter, there is simply no basis for Defendants' argument that "Plaintiff has abandoned its entire initial set of asserted undisputed material facts, and has now served a new set of asserted undisputed material facts as a replacement." ECF 84-1, p 2. Plaintiff clearly did no such thing. As properly noted by the Court in its Order following Defendants' request for a premotion conference letter (ECF 79) to strike Plaintiff's 56.1 Statement In Response to Defendants' 56.1 Statement, Plaintiff is entitled to submit a Rule 56.1 statement in support of its own summary judgment motion, as it did with Plaintiff's 56.1 Statement In Support of SJ" (ECF 82-3), as well as in opposition to Defendants' motion for summary judgment, as it did with Plaintiff's 56.1 Statement In Response to Defendants' 56.1 Statement (ECF 83-1). Text Order of July 20, 2023; *See* Local Civil Rule 56.1(a), (b).

While Defendants were of course entitled to do the same with respect to their summary judgment motion and their opposition to Plaintiff's motion (Text Order of July 20, 2023), they failed to comply with Local Civil Rule 56.1(b) in their opposition to Plaintiff's motion for summary judgment. Rather than adhering to the requirements of Rule 56.1(b), Defendants instead purported to "controvert" or "dispute" a fact by simply denying the facts while failing to present any factual dispute or by merely offering improper legal argument in an effort to avoid the admissions that Defendants were otherwise compelled to make. See ECF 81, pp. 9-13. Such responses do not create a material dispute and Courts are free to disregard such denials. *Major League Baseball Props., Inc. v. Salvino, Inc*., 542 F.3d 290, 314 (2d Cir. 2008)(responses that use the word "disputed" but do not demonstrate that the dispute is genuine cannot defeat summary judgment).

Thus, the undisputed materials facts presented by Plaintiff in its Plaintiff's 56.1 Statement in Support of SJ" (ECF 82-3) should be properly deemed admitted and the Court should adopt those facts as undisputed. Defendants' attempt to stylize their Defendants' Reply 56.1 Statement (ECF 84-1) as a response to Plaintiff's 56.1 Statement in support of Plaintiff's own motion for summary judgment warrants no consideration from the Court. ECF 84-1 was unquestionably a document filed on ECF in support of Defendants' Reply Brief (ECF 84) and there is to Defendants own motion for summary judgment (ECF 80) and there is no support in procedure or law for Defendants to attempt to use it to supplement their opposition to Plaintiff's summary judgment motion. Defendants cannot be allowed a second chance to dispute the facts proffered in support of Plaintiff's summary judgement motion in its reply to its own summary judgment motion. This is especially true when done in the manner attempted by Defendants—in a way to deny Plaintiff's an opportunity to reply to Defendants' positions on the same facts supporting Plaintiff's summary judgment motion.

**B. <u>Defendants' Reply 56.1 Statement is Procedurally Inappropriate</u>**

However, to the extent the Court views Defendants' Reply 56.1 Statement only as a submission in support of Defendants' own motion for summary judgment, such a reply 56.1 statement is not permitted under Local Rule 56.1. *Mayaguez S.A. v. Citibank*, No. 16 Civ. 6788 (Pgg)(JLC), at *19-20 (S.D.N.Y. Mar. 25, 2022); see also *G.S. v. Pleasantville Union Free Sch. Dist*., No. 19-CV-6508 (CS), 2020 WL 4586895, at *1 (S.D.N.Y. Aug. 10, 2020) (Courts considering Local Civil Rule 56.1 have concluded that a reply 56.1 statement constitutes "a procedurally improper attempt to have the last word in a manner that is not contemplated by the local rules.")

A reply 56.1 statement by Defendants is particularly inappropriate in this case. There are cross motions relating to infringement in this case. In addition to their own Rule 56.1 statement in

support of Defendants' motion for Summary Judgment (ECF 80, p. 6), Defendants also already had the opportunity to respond to Plaintiff's 56.1 Statement In Support of SJ. See ECF 81, pp. 9-13. Given these circumstances, Defendants' Reply 56.1 Statement merely gives Defendants a third opportunity to communicate to the Court their understanding of the material facts as well as Defendants' evidence in support of those facts. Thus, permitting Defendants a Reply 56.1 Statement is unnecessary.

Also, permitting Defendants a Reply 56.1 Statement undermines the purpose of Local Rule 56.1, which is to streamline the consideration of summary judgment motions." *Thompson v. Spota*, 2018 WL 6163301, at *16 (E.D.N.Y. Aug. 23, 2018) (citations and quotations omitted), report and recommendation adapted, 2018 WL 4771901 (Sept. 30, 2018). Here, Defendants' Reply 56.1 Statement accomplishes quite the opposite of streamlining the proceedings. Instead Defendants use their reply 56.1 statement to attempt to introduce new and untimely arguments and evidence expanding drastically the issue presented to the Court.

Moreover, it would be manifestly unfair to Plaintiff to allow Defendants to attempt to rectify its failures in its opposition 56.1 statement with its reply 56.1 statement after Plaintiff filed its reply brief in support of its motion for summary judgment without a set understanding of which material facts were in dispute. *Julian v. MetLife, Inc.,* 2021 U.S. Dist. LEXIS 164910 *16 (S.D.N.Y. 2021)(Where Plaintiff was denied the opportunity to reply to a Reply 56.1 Statement, in order to avoid any unfairness, the Court granted Plaintiff's motion to strike the Reply 56.1 Statement).

If Defendants' Reply 56.1 Statement is not stricken, then fairness would require that Plaintiff be provided the opportunity to submit both a sur-reply 56.1 statement as well as a sur-reply brief, at Defendants' expense.

### C. <u>The Reply 56.1 Statement Responses are Inappropriate Under Rule 56.1</u>

Ultimately, essentially each of Defendants' responses in their reply 56.1 statement, with the exception of the facts that were undisputed, are in violation of Rule 56.1. It is inappropriate for a Rule 56.1 statement, response or counterstatement to include legal argument or legal conclusions. *Julian v. MetLife, Inc.,* 2021 U.S. Dist. LEXIS 164910 *16 (S.D.N.Y. 2021). Courts should disregard any assertions that are not supported by the record, responses that are unresponsive to the asserted fact, and any improper argumentation, especially in a reply 56,1 statement. *Id.*; see also *Sanders v. City of New York*, 2021 U.S. Dist. LEXIS 113239 (E.D.N.Y. 2021)(The Court must also disregard conclusory denials that lack citations to admissible evidence.).

Rather than adhering to these requirements, Defendants filled their Reply 56.1 Statement with mere denials (for example, see Reponses No. 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 17, 18, 19, 21, 25, 26, 27), or legal argument and attorney narrative (for example, see Reponses No. 1, 20, 22, 23, 24, 28, 30, 36, 40, 43, 44, 48, 50, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63). Such responses do not create a material dispute and merely serve to distract from the real issues regarding infringement. Courts are free to disregard such denials. See *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 74 (2d Cir. 2001).

## IV. CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's motion to strike. Alternatively, if the Court decides not to strike these filings, Plaintiff should be granted leave to reopen fact and expert discovery on these newly presented arguments and to refile its summary judgment filings at Defendants' expense.

Forest Hills, New York
Dated: September 21, 2023

By: <u>/Michael G. Gabriel/</u>

Michael G. Gabriel, Esq. (MG9719)
Gabriel & Pelaez, PLLC
72-11 Austin Street, PMB No. 406
Forest Hills, NY 11375
T: 917-515-3970
E: Michael@gandplaw.com

Erickson Law Group, PC
Randall T. Erickson
1749 S. Naperville Rd., STE 202
Wheaton, Illinois 60189
T: 630-665-9404
E: Randall@ericksonlawgroup.com

*Attorneys for Plaintiff*
*Tools Aviation LLC*