UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
TOOLS AVIATION, LLC,

                          Plaintiff,

             - against -

DIGITAL PAVILION ELECTRONICS LLC,
EAST BROOKLYN LABS LLC, and
FIREMALL LLC,

                        Defendants.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
20-CV-2651 (PKC) (VMS)

PAMELA K. CHEN, United States District Judge:

       Plaintiff Tools Aviation, LLC ("Plaintiff") has sued Defendants Digital Pavilion

Electronics LLC ("Digital"), East Brooklyn Labs LLC ("East Brooklyn"), and Firemall LLC

("Firemall") (collectively, "Defendants"), for selling "battery caddies" that infringe on three of

Plaintiff's patents.  Before the Court are the parties' cross-motions for summary judgment with

respect to infringement, Defendants' request to strike Plaintiff's expert testimony,[1] and Plaintiff's

motion to strike Defendants' reply brief and reply Local Rule 56.1 statement in support of their

motion for summary judgment.  For the reasons explained below, the Court denies Defendants'

request to strike Plaintiff's expert testimony, grants Plaintiff's motion for summary judgment,

denies as moot Plaintiff's motion to strike Defendants' reply brief and reply Local Rule 56.1

statement, and denies as moot Defendants' motion for summary judgment.

---

[1] A request to strike expert testimony is, ordinarily, properly presented as a standalone motion. *See Sunscreen Mist Holdings, LLC v. SnappyScreen, Inc.*, No. 19-CV-835 (PKC) (SJB), 2024 WL 1308707, at *2 (E.D.N.Y. Mar. 27, 2024).  However, the Court permitted Defendants to "incorporate any arguments to strike portions of Plaintiff's expert report in their opening summary judgment brief" and permitted Plaintiff to "address these arguments in its opposition papers." (5/15/2023 Docket Order.)

## BACKGROUND

### I.      Factual Background and Claim Construction[2]

The Court presumes the parties' familiarity with the facts and procedural history of this case, which are set forth in detail in the Court's September 23, 2021, Memorandum and Order granting Plaintiff's motion to dismiss Defendants' counterclaim, and only recites facts relevant to the parties' cross-motions for summary judgment. *See Tools Aviation, LLC v. Digit. Pavilion Elecs. LLC* (*Tools I*), No. 20-CV-2651 (PKC), 2021 WL 4340949, at *1 (E.D.N.Y. Sept. 23, 2021). As the Court explained in its September 23, 2021, Memorandum and Order:

> Plaintiff makes and sells a "battery caddy" under the trademarks Storacell® and Powerpax® (the "Storacell®" device) (*see* Complaint ("Compl."), Dkt. 1, ¶¶ 17–21), pictured below:

---

[2] Unless otherwise noted, a standalone citation to a party's Local Rule 56.1 statement denotes that this Court has deemed the underlying factual allegation undisputed.  Any citation to a party's Local Rule 56.1 statement incorporates by reference the documents cited therein.  Where relevant, however, the Court may cite directly to an underlying document.  However, where either party (i) admits or (ii) denies without citing to admissible evidence certain of the facts alleged in in the other's 56.1 statement, the Court may deem any such facts undisputed.  *See* Local Rules of the United States District Courts for the Southern and Eastern Districts of New York 56.1(c)–(d); *Lumbermens Mut. Cas. Co. v. Dinow*, No. 06-CV-3881 (TCP), 2012 WL 4498827, at *2 n.2 (E.D.N.Y. Sept. 28, 2012) ("Eastern District Local Rule 56.1 requires . . . that disputed facts be *specifically* controverted by admissible evidence.  Mere denial of an opposing party's statement or denial by general reference to an exhibit or affidavit does not specifically controvert anything."); *Risco v. McHugh*, 868 F. Supp. 2d 75, 87 n.2 (S.D.N.Y. 2012).



(*see* Dkt. 39, at 2; *see also* STORACELL BATTERY MANAGEMENT, *AA – 12 Packs*, https://storacell.net/products/aa-packs/#single/0 (last visited Sept. 17, 2021)).

Plaintiff designed the Storacell® for pilots to store and dispense batteries in emergencies.  (*See* Compl., Dkt. 1, ¶ 22.)  The Storacell® also can provide a convenient battery storage method for use in homes, cars, offices, and shops.  (*Id.*)

On October 30, 2007, the United States Patent and Trademark Office ("PTO") issued U.S. Patent No. 7,287,648 to Plaintiff, entitled "Battery Holder and Dispenser."  (*See* U.S. Patent No. 7,287,648 ("['648 Patent]"), Dkt. 1-1.)  On September 18, 2012, the PTO issued U.S. Patent No. 8,267,252 to Plaintiff, entitled "Battery Holder and Dispensing Package."  (*See* U.S. Patent No. 8,267,252 ("['252 Patent]"), Dkt. 1-2.)  On May 5, 2015, the PTO issued U.S. Patent No. 9,022,218 to Plaintiff, also entitled "Battery Holder and Dispensing Package." (*See* U.S. Patent No. 9,022,218 ("['218 Patent]"), Dkt. 1-3.)

Sometime before October 16, 2019, Defendants began selling the "RadCad Battery Charger and Caddy for AA Rechargeable Batteries" ("RadCad") and the "East Brooklyn Labs Durable AA Battery Storage" ("RadCad [c]addy") (Compl., Dkt. 1, ¶ 25), [the latter of which is] pictured below:



(*see* Dkt. 1-16 (annotations removed); *see also* AMAZON, *RadCad Battery Charger and Caddy for AA Rechargeable Batteries*, https://www.amazon.com/dp/B07N8KGBPV?ref=vse_pfo_vdp (last visited Sept. 17, 2021)).

*Tools I*, 2021 WL 4340949, at *1.

On June 15, 2020, Plaintiff initiated this action alleging infringement by Defendants of the '648 Patent, the '252 Patent, and the '218 Patent. (Compl., Dkt. 1, ¶ 11.) After a claim construction hearing, on December 15, 2021, the Court adopted the following constructions of two disputed terms relevant to the patents at issue:

- **Bottom wall**: A rigid structure at the bottom end of a battery compartment at least partially closing the bottom end of the compartment to prevent a battery from falling through the bottom of the compartment.

- **Protrusion into each compartment**: A structure that protrudes from a compartment sidewall into each compartment.

*Tools Aviation, LLC v. Digit. Pavilion Elecs. LLC* (*Tools II*), No. 20-CV-2651 (PKC), 2021 WL 5920142, at *1 (E.D.N.Y. Dec. 15, 2021).

On January 6, 2023, Plaintiff emailed Defendants' counsel to provide notice that Plaintiff had reduced its asserted infringement claims to the following: Claim 12 of the '648 Patent; Claims 1 and 24 of the '252 Patent; and Claims 1 and 13 of the '218 Patent (collectively, the "Asserted Claims"). (Dkt. 82-9 at ECF 2.)[3] The Asserted Claims are set forth *infra* in the Discussion section.

## II.    Fact and Expert Discovery

During discovery, Plaintiff served requests for admission ("RFAs") on Defendants. (Dkt. 82-3 ("Pl.'s 56.1") ¶ 72.) Notwithstanding their objections that the RFAs were ambiguous and called for legal conclusions, Defendants admitted the following with respect to their RadCad caddy:[4]

- "The RadCad caddy includes 12 compartments molded together as a single piece . . . for receiving 12 AA batteries and a 'removable bottom' that can be installed onto the single piece compartments at one end of the single piece." (Pl.'s 56.1 ¶ 87; Gabriel Decl. ¶ 20, Ex. 18, at 27, RFA 74.) "The 'removable bottom' includes two hook portions and the hook portions snap-engage onto the single piece compartments of the RadCad caddy to install the 'removable bottom' onto the single piece compartments." (Pl.'s 56.1 ¶ 88; Gabriel Decl. ¶ 20, Ex. 18, at 27–28, RFA 75.)

- "Without the 'removable bottom' on the single piece compartments, a battery can be displaced from a compartment through either end of the single piece compartments by forcibly deflecting the detents located adjacent either end of the

---

[3] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[4] Plaintiff incorporates these statements into its Local Rule 56.1 statement of undisputed material facts. (Pl.'s 56.1 ¶¶ 87–95.) Although Defendants dispute numerous paragraphs of Plaintiff's Local Rule 56.1 statement—namely, paragraphs 14–15, 49, 74, 83, 95, and 102–09— they do not dispute any of the paragraphs cited herein. (*See* Dkt. 81, 10–13.) The Court rejects Defendants' request that the Court "ignore" the remainder of Plaintiff's 56.1 statement as asserting "ordinary facts"—as opposed to "material facts"—because, as discussed *infra*, numerous statements contained in Plaintiff's 56.1 statement are, in fact, material. (*See* Defs.' Opp'n 9–10.)

single piece compartments by force exerted on the detent by the battery pushed by a user." (Pl.'s 56.1 ¶ 89; Gabriel Decl. ¶ 20, Ex. 18, at 28, RFA 76.)

- However, when "the 'removable bottom' [is] attached to a first end of the single piece compartments, a battery can be displaced through only an opposite, second end of the single piece compartments by deflecting a detent located adjacent the second end by force exerted on the detent by the battery pushed by a user," (Pl.'s 56.1 ¶ 90; Gabriel Decl. ¶ 20, Ex. 18, at 28–29, RFA 77), and when the removable bottom is "attached to a first end of the single piece compartments of the RadCad battery caddy," the RadCad caddy "does not releasably retain batteries within the compartments at the first end," (Pl.'s 56.1 ¶ 91; Gabriel Decl. ¶ 20, Ex. 19, at 29, RFA 78).

- Further, when the removable bottom is "attached to a first end of the single piece compartments of the RadCad battery caddy, and the RadCad battery caddy is oriented upright with the 'removable bottom' located at a bottom of the RadCad battery caddy, when a[n] AA battery is placed into a compartment of the RadCad battery caddy," (Pl.'s 56.1 ¶ 95; Gabriel Decl. ¶ 20, Ex. 18, at 30–31, RFA 81), "the AA battery contacts a . . . portion of the 'removable bottom' and the closest adjacent detent does not touch the battery," (Pl.'s 56.1 ¶ 94; Gabriel Decl. ¶ 20, Ex. 18, at 30, RFA 81). Thus, "the 'removable bottom' prevents the detent adjacent the first end of the compartment from functioning to releasably retain the battery within the compartment at the first end of the RadCad battery caddy." (Pl.'s 56.1 ¶ 95; Gabriel Decl. ¶ 20, Ex. 18, at 31, RFA 82.)

On November 30, 2022, Plaintiff deposed Defendants' representative, Mitchel Berkowitz ("Berkowitz"), pursuant to Rule 30(b)(6). (Dkt. 82-24 ("Berkowitz Tr.").) During the deposition, Berkowitz admitted that once the RadCad caddy's "removable bottom" (which Berkowitz also referred to as a "marker plate") "is attached . . . you would not be able to remove the battery from that side that the marker plate was attached to." (*Id.* at 249:8–14; *see id.* at 239:20–22.) Berkowitz further testified that when "putting a battery into the caddy without the second piece"—the "marker plate" or "removable bottom"—attached, the battery is retained in the RadCad caddy. (*See id.* at 249:20–25.) Lastly, one "could remove . . . the battery from the side opposite the second piece even though it was retained in the caddy," because "that side is not being physically blocked by the marker plate." (*See id.* at 250:5–10.) This is "[b]ecause the way the marker plate was

6

designed, . . . it overlaps partially into the area that the battery would come out of on that side of the product[.]"  (*Id.* at 250:14–17.)

Plaintiff further obtained the testimony of an expert witness, Dr. Donald Russell Peterson ("Dr. Peterson"), a mechanical engineer and professor of engineering and medicine.  (Dkt. 82-25 ("Peterson Report") at 1–2.)  In his expert report, which contained an element-by-element analysis of each claim's literal infringement and infringement under the doctrine of equivalents, as well as an analysis of Dr. Peterson's independent testing of the RadCad caddy, Dr. Peterson opined:

> The removable bottom alone, or the combination of the removable bottom and the underlying detents, perform the same function, preventing the battery from falling out of the bottom end of the RadCad caddy, in substantially the same way, by providing a blocking structure to movement of the battery past a bottom end of the RadCad caddy, to achieve substantially the same result, preventing the battery from falling out of the bottom end of the RadCad caddy.

(*Id.* at 14.)

> Additionally, by observation, the removable bottom includes features that would not be necessary if the only function of the removable bottom was to serve as a reminder plate,[5] and not as a support member.  For example, the removable bottom includes half-cylinder extensions, indicated as 25 in Photos 4A and 4B, that extend toward the batteries in the caddy and support the batteries in the caddy.

(*Id.* at 49.)  Based on his analyses of each element of each claim, Dr. Peterson concluded that "[a]ll claim elements of the asserted claims of the [']648 Patent; the [']252 Patent; and the [']218 Patent are present in the RadCad caddy either literally or under the Doctrine of Equivalents."  (*Id.* at 51.)

## III.    Procedural Background

On June 14, 2023, Plaintiff served its motion for summary judgment of infringement on Defendants, and Defendants served their motion for summary judgment of non-infringement on Plaintiff.  (Dkt. 82-2 ("Pl.'s Mem.") at 20; Dkt. 80-1 ("Defs.' Mem.") at 31.)  On July 17, 2023,

---

[5] As Dr. Peterson explained, the removable bottom may serve as a "reminder clip" to indicate "the charging state of the batteries."  (*Id.* at 46.)

the parties exchanged opposition papers.  (Dkt. 81 ("Defs.' Opp'n") at 23; Dkt. 83 ("Pl.'s Opp'n") at 22.)  And on August 7, 2023, the parties exchanged reply briefs.  (Dkt. 85 ("Pl.'s Reply") at 12; Dkt. 84 ("Defs.' Reply") at 14.)

On September 21, 2023, Plaintiff filed a motion to strike Defendants' reply in support of their motion for summary judgment of non-infringement.  (Dkt. 86 at 24.)  The Court granted Defendants leave to respond, (10/5/2023 Docket Order), and Defendants did so on November 26, 2023, (Dkt. 88 ("Strike Opp'n") at 21).

## LEGAL STANDARDS

On a motion for summary judgment in a patent case, "a district court applies the law of the circuit in which it sits to nonpatent issues and the law of the Federal Circuit to issues of substantive patent law."  *Speedfit LLC v. Woodway USA, Inc.*, 432 F. Supp. 3d 183, 201 (E.D.N.Y. 2020) (quoting *Mich & Mich. TGR, Inc. v. Brazabra, Corp.*, 128 F. Supp. 3d 621, 629 (E.D.N.Y. 2015), *aff'd sub nom. Mich & Mich TGR, Inc. v. Brazabra Corp.*, 657 F. App'x 971 (Fed. Cir. 2016)) (internal quotation marks omitted).  "The standard for summary judgment in a patent case is the same as in any other case."  *Speedfit LLC v. Chapco Inc.*, 490 F. Supp. 3d 575, 582 (E.D.N.Y. 2020).  "To obtain summary judgment, the moving party must establish that 'there is no genuine dispute as to any material fact,' and, thus, that it is 'entitled to judgment as a matter of law.'"  *EBIN N.Y., Inc. v. SIC Enter., Inc.*, No. 19-CV-1017 (PKC) (TAM), 2023 WL 6141275, at *4 (E.D.N.Y. Sept. 20, 2023) (quoting Fed. R. Civ. P. 56(a)).  "'To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly,' whereas under the doctrine of equivalents infringement occurs when 'there is equivalence between the elements of the accused product . . . and the claimed elements of the patented invention.'"  *Microsoft Corp. v. GeoTag, Inc.*, 817 F.3d 1305, 1313 (Fed. Cir. 2016) (first quoting *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995); then quoting *Duramed Pharm., Inc. v. Paddock Labs., Inc.*,

644 F.3d 1376, 1380 (Fed. Cir. 2011)).  "When evaluating cross-motions for summary judgment, the Court reviews each party's motion on its own merits and draws all reasonable inferences against the party whose motion is under consideration."  *Walker v. Raja*, No. 17-CV-5202 (PKC) (LB), 2020 WL 606788, at *3 (E.D.N.Y. Feb. 7, 2020) (citing *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001); *see Frilando v. N.Y.C. Transit Auth.*, 463 F. Supp. 3d 501, 510 (S.D.N.Y. 2020) ("When parties cross-move for summary judgment, the Court analyzes the motions separately, 'in each case construing the evidence in the light most favorable to the non-moving party.'" (quoting *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018))).

## DISCUSSION

### I.    Defense Counsel's Conduct

Before addressing the parties' arguments, the Court finds it necessary to address defense counsel's concerning conduct in this matter.  The Court does not do so lightly.

Throughout Defendants' four major submissions presently before the Court—Defendants' brief in support of their motion for summary judgment, reply in support of their motion for summary judgment, opposition to Plaintiff's motion to strike Defendants' reply, and opposition to Plaintiff's motion for summary judgment—defense counsel has engaged in numerous personal attacks on opposing counsel and witnesses, including arguments based on unfounded, self-serving interpretations of their personal beliefs and misrepresentations about the contents of Plaintiff's submissions.  (*Compare* Defs.' Mem. at 19 ("It is embarrassing to see [Plaintiff's expert witness,] Prof. Peterson[,] view ordinary people as being very ignorant."), *with* Peterson Report (not discussing or referring at all to Dr. Peterson's personal views on "ordinary people"); *see* Defs.' Mem. at 24–25 (calling Dr. Peterson's work a "sloppy mental experiment" and referring to Defendants' own interpretation of Dr. Peterson's report as "obvious[ly]" correct); Strike Opp'n at 3 ("It is surprising to see two experienced attorneys treat a significant legal issue with

indifference."); *id.* (raising "the question of the sincerity of Plaintiff's legal research" and Plaintiff's "professional fairness" based on the existence of Plaintiff's submission opposing Defendants' reply 56.1 statement).)  In particular, defense counsel's assertions that Dr. Peterson "may not possess sufficient understanding of the English language to understand a patent claim," that Dr. Peterson "would [be] embarrass[ed]" if he presented his "report[] at an engineering conference," and that "the attorneys for Plaintiff welcome[] any dispute that generate[s] work for them," cross the line between colorful legal rhetoric and gratuitous, baseless disparagement. (Defs.' Mem. at 13, 26, 30.)

The Court also calls attention to defense counsel's questioning of "the sincerity of Plaintiff's legal research."  (Strike Opp'n at 3; *see also* Defs.' Opp'n at 8 ("Defendants assumed that [Plaintiff's] two attorneys as officers of the Court would have been more transparent."); Defs.' Reply at 7 (claiming that "Attorney Erickson knew even before the litigation that he was endeavoring to enforce a claim that had been rejected in view of prior art" and that "[a]s a distraction, Plaintiff argues and cites legal sources").)  Such commentary is inappropriate in the first instance.  But given that Defendants cite only one case, once, in their entire brief opposing Plaintiff's motion to strike, (Strike Opp'n at 5); *no* cases in their reply brief in support of their motion for summary judgment, (*see generally* Defs.' Reply); and a total of six cases between Defendants' motion for summary judgment and Defendants' opposition to Plaintiff's motion for summary judgment, (Defs.' Mem. at iii; Defs.' Opp'n at iii)[6]—*all* without meaningful analysis or application of relevant legal standards to the facts at hand—Defendants' attack on Plaintiff's legal analysis for lack of "sincerity" merely calls attention to *Defendants'* exiguous legal analysis.

---

[6] Four cases were each cited once in Defendants' 31-page summary judgment motion, (Defs. Mem. at iii), and two cases were each cited once in Defendants' opposition to Plaintiff's summary judgment motion, (Defs.' Opp'n at iii).

Defendants should, at *minimum*, refrain from attacking Plaintiff's legal analysis as lacking "sincerity" when Defendants have hardly interrogated the law themselves.[7]

This behavior is unprofessional and inappropriate and must stop now. *See Michael v. Gen. Motors Co.*, No. 15-CV-3659 (CM), 2018 WL 6332883, at *14 (S.D.N.Y. Nov. 13, 2018) (holding that disagreement with expert reports as "obviously wrong to 'anyone with eyes'" and *ad hominem* attacks calling reports "not only biased but unjust" and "absurd and comical" were not cognizable bases for challenging expert reports); *Fernandez v. Peter J. Craig & Assocs., P.C.*, 985 F. Supp. 2d 363, 371 (E.D.N.Y. 2013) ("To the extent [that] ad hominem attacks or other gratuitous allegations are asserted in the future, I will consider the imposition of sanctions."); *In re Brizinova*, 565 B.R. 488, 499–500 (Bankr. E.D.N.Y. 2017) (noting that "[c]ourts have approved discipline . . . based on a lawyer making 'multiple derogatory and unprofessional attacks upon the personal attributes' of another attorney" (quoting *In re Raskin*, 635 N.Y.S.2d 268, 270 (N.Y. App. Div. 1995))). Going forward, defense counsel shall refrain from such *ad hominem* attacks, and is warned that the use of such language in the future could result in sanctions.

---

[7] The Court also notes Defendants' criticism of Plaintiff's counsel for "fail[ing] to read Local Civil Rule 56.1," (Strike Opp'n at 7)—which requires that "[e]ach statement by the movant or opponent" in its Local Rule 56.1 statement or counterstatement "be followed by citation to evidence which would be admissible," Local Rule 56.1(d)—despite the fact that Defendants' own Local Rule 56.1 submissions contain few or no specific citations to evidence in the record as required by that rule. (*See* Defs.' Mem. at 6 (containing "Defendants' Statement of Material Facts Pursuant to Local Civil Rule 56.1 in Suport [sic] of Motion for Summary Judgment," without any citations to the record); *see, e.g.*, Dkt. 84-1 (purporting to dispute numerous "New Asserted Material Facts Pursuant to Local Civil Rule 56.1," predominantly without citing evidence in support)); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record[.]"). Further, Defendants' Local Rule 56.1 statement is not "a separate" statement as required by Local Rule 56.1(a). (*See* Defs.' Mem. at 6.)

## II.      Defendants' Request to Strike Plaintiff's Expert Testimony

Turning to the parties' motions, first, Defendants seek to strike the testimony of Plaintiff's expert, Dr. Peterson, submitted in support of Plaintiff's motion for summary judgment.  (Defs.' Mem. at 31.)  Defendants' submissions—which, as noted *supra*, are nearly devoid of citations to relevant legal principles and are rife with unsupported assumptions, logical fallacies, and *ad hominem* attacks on Plaintiff's counsel and expert witness—are difficult to understand, at best. (*See* Pl.'s Reply at 1 ("Instead of facts and case law, Defendants' arguments are replete with red herrings, strawman arguments, and misleading analysis.  What is not found in Defendants' arguments on non-infringement is a properly supported factual dispute or any reliance on case law establishing a material dispute as to infringement.").  *See generally, e.g.*, Defs.' Mem.; Defs.' Reply.)  However, it appears that Defendants' arguments fall along two broad lines: that the Court should strike Dr. Peterson's testimony because, first, Dr. Peterson is not qualified as an expert witness; and second, because Dr. Peterson's methodology and conclusions are flawed.  For the reasons explained below, the Court declines to strike Dr. Peterson's testimony, and, in fact, as discussed *infra*, finds his expert opinions sufficient to establish infringement on summary judgment.

"Trial courts serve as 'gatekeep[ers],' responsible for 'ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'"  *Athena Art Fin. Corp. v. Certain Artwork by Jean-Michel Basquiat Entitled Humidity, 1982*, No. 20-CV-4669 (GBD) (VF), 2024 WL 1116083, at *2 (S.D.N.Y. Mar. 14, 2024) (first quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 597 (1993); then quoting *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 48 (2d Cir. 2004)).  Thus, "[w]hen examining the admissibility of expert testimony, the Court . . . must determine, within its sound discretion, whether the 'proponent of expert testimony' has met the 'burden of establishing by a preponderance of the evidence' that the expert's testimony satisfies

12

the admissibility standard under [Federal Rule of Evidence] 702." *Hughes v. The Ester C Co.*, 317 F.R.D. 333, 341 (E.D.N.Y. 2016) (quoting *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007)).  "Under Federal Rule of Evidence 702, expert testimony is admissible where: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." *Phoenix Light SF Ltd. v. Wells Fargo Bank, N.A.*, 574 F. Supp. 3d 197, 200 (S.D.N.Y. 2021); *S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 674 (S.D.N.Y. 2013) (citing *Nimely v. City of New York*, 414 F.3d 381, 396–97 (2d Cir. 2005)); *see also* Fed. R. Evid. 702 (setting forth criteria for determining the admissibility of expert testimony); *Daubert*, 509 U.S. at 597.

"Whether a witness is qualified as an expert is a threshold question that precedes the court's relevance and reliability inquiries." *Athena*, 2024 WL 1116083, at *2 (quoting *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 636 (S.D.N.Y. 2016)).  "Under Rule 702, the witness must be 'qualified as an expert by knowledge, skill, experience, training, or education.'"  *Id.* (quoting *LVL XIII Brands*, 209 F. Supp. 3d at 636).  "To determine whether a witness qualifies as an expert, courts compare the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony." *Id.* (quoting *In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 341 F. Supp. 3d 213, 240 (S.D.N.Y. 2018), *aff'd*, 982 F.3d 113 (2d Cir. 2020)).  However, "[c]ourts in this Circuit have liberally construed the [expert] qualification requirements of Rule 702." *523 IP LLC v. CureMD.Com*, 48 F. Supp. 3d 600, 642 (S.D.N.Y. 2014).  Thus, "[w]here an expert 'has educational and experiential qualifications in a general field closely related to the subject matter

in question, the court will not exclude the testimony solely on the ground that [he] lacks expertise in the specialized areas that are directly pertinent.'" *Athena*, 2024 WL 1116083, at *3 (quoting *Arista Recs. LLC v. Lime Grp. LLC*, No. 06-CV-5936 (KMW), 2011 WL 1674796, at *3 (S.D.N.Y. May 2, 2011)).  However, "an expert basing his opinion solely on his experience must do more than aver conclusorily that his experience led to his opinion: '[i]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'"  *523 IP LLC*, 48 F. Supp. 3d at 643  (quoting *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC*, 691 F. Supp. 2d 448, 473 n.148 (S.D.N.Y. 2010)).

Defendants attack Dr. Peterson's expert qualifications on two grounds.  First, Defendants assert that Plaintiff's counsel denominated Dr. Peterson as an "infringement expert," but because Dr. Peterson self-identifies as an expert in biomedical engineering and medical devices, he cannot serve as an infringement expert.  (Defs.' Mem. at 8.)  Second, Defendants assert that because Dr. Peterson has never before served as an expert witness on the issue of infringement, he is not qualified to do so now.  (*Id.*)  The Court disagrees with both arguments.

A witness may have sufficient experience to qualify him as an expert even if his experience is in a slightly different area than the one he will testify about, or if he has never served as an expert witness before.  *Vicuna v. O.P. Schuman & Sons, Inc.*, 298 F. Supp. 3d 419, 442 (E.D.N.Y. 2017) (holding that expert witness with relevant experience could "at least *assist* the trier of fact" even though he "ha[d] never previously worked directly" with the machine at issue, and that his experience "goes to the weight of [his] testimony, and not his threshold qualification to testify"); *Argonaut Ins. Co. v. Samsung Heavy Indus. Co. Ltd.*, 929 F. Supp. 2d 159, 172–76 (N.D.N.Y.

2013) (collecting cases and holding that witness who was "not an academically trained engineer and has not published articles in peer-reviewed journals" nevertheless was qualified to offer expert testimony based on "his background and experience"); *Kidder, Peabody & Co., Inc. v. IAG Int'l Acceptance Grp. N.V.*, No. 94-CV-4725 (CSH), 1999 WL 11553, at *10 (S.D.N.Y. Jan. 13, 1999) ("[I]t comes down to the question of whether the witness has specialized knowledge . . . to allow him to say something useful to a lay jury, even if that knowledge does not fall squarely within the specific and narrow confines of the particular issue at hand."); *cf. GeigTech E. Bay LLC v. Lutron Elecs. Co., Inc.*, No. 18-CV-5290 (CM), 2023 WL 6614486, at *20–21 (S.D.N.Y. Sept. 20, 2023) (holding that expert's experience in industrial design, window fascia design, and architectural hardware design "equip[ped] her to opine . . . that specific aspects of the [challenged] trade dress [did] not perform any function . . . but [were] in fact purely ornamental," and that opposing party could offer rebuttal expert testimony or cross-examine the expert witness to the extent that the opposing party believed her opinions "[were] incomplete because she fail[ed] to consider certain evidence or fail[ed] to address certain issues").

Here, Plaintiff has established by a preponderance of evidence that Dr. Peterson is qualified to serve as an expert witness. *See Hughes*, 317 F.R.D. at 341. At the time he served as an expert in this case, Dr. Peterson was Dean of the College of Engineering and Engineering Technology and a Professor of Mechanical Engineering at Northern Illinois University, and had been a university professor in engineering and medicine for 23-1/2 years. (Peterson Report at 1–2.) Dr. Peterson had also worked as a Ph.D. research mentor in biomechanical modeling and medical device design and had contributed to multiple publications regarding physical modeling of various medical devices (e.g., via 3D printing), among numerous other qualifications. (*See* Dkt. 82-26 at 8, 11, 14.) Dr. Peterson had also been involved in product testing and engineering evaluations for

a range of companies, including tool manufacturers such as Stanley Toolworks Inc. and Milwaukee Tools, and government agencies such as the National Aeronautics and Space Administration and the National Institute of Occupational Safety and Health.  (Peterson Report at 2.)  Notably, Dr. Peterson is also "very familiar in the properties of molded plastic parts and how molded plastic products may wear during repeated friction events." (*Id.*)

Dr. Peterson's report notes that he was retained "to provide testing of RadCad battery caddies, to opine on the one-to-one correspondence between the Asserted Claims and the RadCad caddy, and to opine on the elements of the RadCad caddy and the Doctrine of Equivalents." (*Id.* at 3.)  Dr. Peterson's educational, research, and work experience as a mechanical and biomedical engineer sufficiently qualifies him to test and opine on whether the design of such devices "corresponds" or is otherwise "equivalent." *Cf. Vicuna*, 298 F. Supp. 3d at 442; *Argonaut Ins. Co.*, 929 F. Supp. 2d at 172–76.  Dr. Peterson certainly has "something useful [to say] to a lay jury, even if that knowledge does not fall squarely within the specific and narrow confines of the particular issue at hand[,]" i.e., the design of a battery caddy. *Kidder*, 1999 WL 11553, at *10.

Second, even a first-time "expert" may qualify as an expert witness. *See United States v. Locascio*, 6 F.3d 924, 937 (2d Cir. 1993) ("[E]ven the most qualified expert must have his first day in court.").  Otherwise, "all courts would be devoid of expert witnesses—there must be a first time for everything." *Vicuna*, 298 F. Supp. 3d at 442.  Dr. Peterson's lack of prior experience as an expert witness, therefore, does not preclude him from being qualified as an expert witness in this case.

The Court further rejects Defendants' various arguments essentially that Dr. Peterson's report should be excluded as unreliable.  (*See generally* Defs.' Mem. at 17–29.)  For example, whether Plaintiff's counsel selected the batteries that Dr. Peterson used for his testing is irrelevant

to whether the RadCad caddy infringes Plaintiff's patents.  (*See id.* at 9.)  As discussed in more detail *infra* Section III.B, Dr. Peterson's report showed that the RadCad caddy's removable bottom prevents at least some AA batteries from falling out of the bottom end of the device—regardless of the origin of those batteries—which supports a finding of infringement because "an accused device that sometimes, but not always, embodies a claim[ ] nonetheless infringes."[8] *Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1333 (Fed. Cir. 2013) (alteration in original) (quoting *Bell Commc'ns Rsch., Inc. v. Vitalink Commc'ns Corp.*, 55 F.3d 615, 622–23 (Fed. Cir. 1995)); (*see also* Peterson Report at 47 (stating that batteries in the RadCad caddy either "rest on the removable bottom" or "are supported by the removable bottom"); Dkt 82-29 at ECF 6 ("[O]n average, applying a force . . . of about four times the average peak force [needed to push a battery past one of the RadCad caddy's detents] did not detach the bottom wall from [the RadCad caddy].")).  Additionally, that Dr. Peterson reviewed only relevant portions of the patents' file histories does not render his analysis fatally flawed or unreliable.[9]  (*See* Defs.' Mem. at 9–10 (asserting that "[a]t least knowing the arguments for overcoming a rejection of a claim by the Patent Examiner would alert the Expert as to possible limitations of the scope of some claims" even though Dr. Peterson testified that he reviewed the "relevant portions" of the file histories); Pl.'s Opp'n at 15 ("Dr. Peterson's limited role was to undertake testing of the RadCad caddy and to compare limitations

---

[8] For the same reason, the Court rejects Defendants' assertion that Dr. Peterson's analysis is flawed because it improperly assumes that consumers will load the RadCad caddy with batteries that will fall out of it unless the removable bottom is attached.  (*See* Defs.' Mem. at 3.)  This argument does not dispute Plaintiff's showing that the removable bottom prevents at least *some* batteries from falling out of the RadCad caddy.

[9] It bears noting that Defendants appear to concede that defense counsel did not review the complete file histories either.  (Defs.' Opp'n at 8 ("The file histories of each of the Asserted Patents are almost 1000 boring pages each and a perusal did not reveal . . . important information readily.").)

in each asserted claim to the RadCad caddy.").)  In any event, Defendants do "not argu[e] that any of the definitions that Dr. Peterson adopted" based on his review of the file histories "were wrong" or that they should have had "a different meaning."  (Pl.'s Opp'n at 17.)

Finally, Defendants assert that Dr. Peterson was untruthful at his deposition, "raising serious question[s] about . . . [his] competence and integrity."  (Defs.' Mem. at 7.)  This assertion is without basis.  For example, Defendants suggest that Dr. Peterson was untruthful because he characterized himself as "'an expert on behalf of Plaintiff' without any mention that he has expertise in evaluating infringement."  (*Id.* at 8 (referring to "questionable testimony" by Dr. Peterson).)  This is a silly semantic "argument."  Dr. Peterson's statement was an accurate statement of his role vis-à-vis this litigation and does not demonstrate, in any way, that Dr. Peterson was being untruthful or lacks credibility.  Other attacks on Dr. Peterson by Defendants are misleading or simply inaccurate.  Defendants assert that Dr. Peterson could not understand key terms in his own infringement analysis, including the phrase "properly construed"; that Dr. Peterson contradicted himself at his deposition regarding his reliance on the Court's construction of the term "bottom wall"; that Dr. Peterson "could not understand his own analysis" of Claim 12 of the '648 Patent because he believed a battery could only be removed by pushing it out, not by turning over the caddy; and that Dr. Peterson concluded that Claim 24 of the '252 Patent is inoperable.  (*Id.* at 10–13.)  In fact, Dr. Peterson explained his understanding of the phrase "properly construed" at his deposition, (Dkt. 91-1 at 101:10–103:5); he clarified on cross-examination during his deposition that he applied the Court-construed definitions of "bottom wall" and "protrusion into each compartment" in his expert analysis, notwithstanding his use of the plain and ordinary meanings of other terms, (*id.* at 126:7–12, 177:5–178:6); he explained in his expert report that he repeatedly turned over the RadCad caddies during testing to release batteries from

them, including as part of his analysis of the Claim 12 of the '648 Patent, (*see* Dkt. 82-29 at ECF 6); and he never stated that he deemed Claim 24 of the '252 Patent to be inoperable, (*see generally* Peterson Report).

For all the foregoing reasons, the Court declines to strike the testimony of Plaintiff's expert, Dr. Peterson, and as discussed next, finds it sufficient to establish infringement on summary judgment.

## III.   Plaintiff's Motion for Summary Judgment of Infringement

Plaintiff argues that Dr. Peterson's report "leave[s] no question that the RadCad caddy includes each and every element of the Asserted Claims, as demonstrated in the element-by-element analysis" undertaken by Dr. Peterson.  (Pl.'s Mem. 13.)  The Court agrees, and grants Plaintiff's motion for summary judgment, finding infringement by Defendants as a matter of law.

### A.   Legal Standard

"To establish infringement of a patent, every limitation set forth in a claim must be found in an accused product or process exactly or by a substantial equivalent." *Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 796 (Fed. Cir. 1990).  "It is well settled that an accused device that sometimes, but not always, embodies a claim[ ] nonetheless infringes." *Broadcom Corp.*, 732 F.3d at 1333 (alteration in original) (quoting *Bell*, 55 F.3d at 622–23).  If "there is no dispute regarding the operation of" the accused products, the question of infringement "reduces to a question of claim interpretation and is amenable to summary judgment." *MyMail, Ltd. v. Am. Online, Inc.*, 476 F.3d 1372, 1378 (Fed. Cir. 2007).  "[E]xpert testimony is required . . . always for doctrine-of-equivalents infringement and sometimes for literal infringement." *Kyocera Senco Indus. Tools Inc. v. Int'l Trade Comm'n*, 22 F.4th 1369, 1377 (Fed. Cir. 2022) (citing *AquaTex Indus., Inc. v. Techniche Sols.*, 479 F.3d 1320, 1329 (Fed. Cir. 2007)).

**B.**     **The Accused Product Infringes on Plaintiff's Patents**

As previously noted, Plaintiff has narrowed its infringement claims to the Asserted Claims:

Claim 12 of the '648 Patent; Claims 1 and 24 of the '252 Patent; and Claims 1 and 13 of the '218

Patent.  (Dkt. 82-9 at ECF 2.)

With respect to the '648 Patent, Claim 12 reads as follows:

12. A battery holding and dispensing apparatus for holding and dispensing elongated cylindrical batteries, comprising:

> a first frame, said first frame, sized and configured to be held and supported in a user's hand, and including a plurality of compartments, each compartment having sidewalls to hold the batteries with longitudinal axes of the batteries in an upright orientation, wherein said compartments each comprise a bottom wall having an open area exposing a bottom portion of a battery within said compartment wherein a user can touch with a finger a bottom edge of the battery held in the compartment through the open area, each sidewall defining an end opening sized to allow removal of a battery from within said compartment, wherein said compartments are arranged to hold said batteries oriented side-by-side in parallel and wherein a user can at least partially remove a battery through said end opening by pushing the battery with the finger moved through the open area.

('648 Patent, Dkt. 82-5, at ECF 16.)

With respect to the '252 Patent, Claims 1 and 24 read as follows:

1. In combination, a battery holding and dispensing apparatus for holding and dispensing household batteries, and a plurality of batteries each having a first end, an opposite, second end and a lengthwise body between the first and second ends with an electrical terminal provided on the first end or both ends, with the body being free of electrical terminals, the battery having a lengthwise centerline oriented to intersect centers of the first and second ends, the battery holding and dispensing apparatus comprising:

> a first frame including a plurality of compartments, each compartment sized and configured to hold one of said plurality of batteries and having a bottom wall, an open end, and a surrounding sidewall defining a space within the compartment between the open end and the bottom wall and a compartment centerline oriented to intersect a center of the open end and centered in the space defined by the surrounding sidewall, the compartment centerline being

collinear with the lengthwise centerline of the battery when inserted into the compartment through the open end, each said surrounding sidewall sized to have a length along said respective compartment centerline that is equal to or greater than a length of a corresponding battery along said battery centerline such that the battery fits in the compartment, said first frame composed of molded plastic; and

a plurality of detents, one detent protruding into a respective open end of each said compartment in order to retain a battery in said compartment, each detent resiliently displaceable from the respective open end to allow removal of the battery from the respective compartment through the respective open end, each detent being composed of molded plastic and formed in unitary fashion with the first frame.

. . .

24. In combination, a battery holding and dispensing apparatus for holding and dispensing household batteries, a plurality of batteries, each having a first end, an opposite second end and a lengthwise body between the first and second ends with an electrical terminal provided on the first end or both ends with the body being free of electrical terminals, the battery having a lengthwise centerline oriented to intersect centers of the first and second ends, the battery holding and dispensing apparatus comprising:

a first frame including a plurality of compartments, each compartment sized to contain one battery of said plurality of batteries therein and having a sidewall to hold said one battery with longitudinal centerline of the one battery in the compartment held in an upright orientation, each sidewall having an opening wherein a user can touch with a finger the one battery held in the compartment through the opening to ascertain a battery size, and the compartment having a top opening for dispensing of the one battery in a direction parallel to the lengthwise centerline of the one battery,

the first frame being composed of a unitary injection molded plastic and having a protrusion into each compartment to retain a battery therein.

('252 Patent, Dkt. 82-6, at ECF 23–24.)

Lastly, with respect to the '218 Patent, Claims 1 and 13 read as follows:

1. A battery holding and dispensing apparatus, comprising: a first frame including a plurality of compartments, each compartment sized and configured to closely conform to the shape and size of the outside perimeter of a standard battery selected from at least one of standard battery sizes AAA, AA, C and 9V, in order to hold the

standard battery snugly within the compartment, and having an open end for dispensing the standard battery out of the compartment, said first frame composed of rigid molded plastic;

each compartment configured for releasably retaining the standard battery within the compartment; and

wherein said compartments each comprise a retaining element, a bottom wall and an open area adjacent to the bottom wall exposing a bottom wall portion of the standard battery within said compartment wherein a user can touch with a finger the bottom wall portion of the standard battery held in the compartment through the open area, and wherein a user can move the standard battery away from said bottom wall of the compartment by a finger pushing against the bottom wall portion of the standard battery within the open area, wherein the standard battery is retained between said bottom wall and said retaining element, said retaining element located adjacent to said open end and wherein movement of the standard battery by force from the user's finger on the bottom wall portion of the standard battery allows removal of a portion of the standard battery from said compartment through said open end when said retaining element is disengaged from the standard battery by force from the standard battery;

wherein each compartment has a longest axial dimension extending between the bottom wall and the open end corresponding to a length of the battery held therein;

wherein said retaining element in each compartment comprises a detent protruding into an end opening defined by the open end of each said compartment, said detent resiliently displaceable from said end opening to allow removal of the standard battery from each of said compartments through said open end.

. . .

13. A battery containing and dispensing apparatus for containing and dispensing elongated batteries, comprising:

a first frame, said first frame including a plurality of compartments, the compartments having sidewalls to contain standard batteries selected from at least one of standard battery sizes AAA, AA, C and 9V with longitudinal axes of the batteries in an upright orientation, each sidewall having an opening wherein a user can touch with a finger the battery held in the compartment through the opening to ascertain a battery size, and each compartment comprises a retaining element, a bottom wall and an open end defining an end opening for dispensing the standard battery from each compartment;

wherein the standard battery is retained between said bottom wall and said retaining element, said retaining element located adjacent

to said open end and wherein movement of the standard battery by force from the user's finger on the standard battery allows removal of a portion of the standard battery from said compartment through said open end when said retaining element is disengaged from the standard battery by force from the standard battery;

wherein each compartment has a longest axial dimension extending between the bottom wall and the open end corresponding to a length of the battery held therein;

wherein said retaining element in each compartment comprises a detent protruding into an end opening defined by the open end of each said compartment, said detent resiliently displaceable from said end opening to allow removal of the standard battery from each of said compartments through said open end.

('218 Patent, Dkt. 82-7, at ECF 23–24.)

Here, there is no genuine dispute of material fact that all of Plaintiff's claimed limitations are present in Defendants' RadCad caddies.

First, Dr. Peterson's expert report walks through each element of each claim, and offers his opinion as to why each element is literally present in the RadCad caddy or, alternatively, why the RadCad caddy contains each element under the doctrine of equivalents. (Peterson Report at 9–15 (discussing Claim 12 of '648 Patent); *id.* at 15–23 (discussing Claim 1 of '252 Patent); *id.* at 24–29 (discussing Claim 24 of '252 Patent); *id.* at 29–39 (discussing Claim 1 of '218 Patent); *id.* at 39–46 (discussing Claim 13 of '218 Patent).)  In the summary judgment context, "a patentee must . . . provide particularized testimony and linking argument as to the 'insubstantiality of the differences' between the claimed invention and the accused device or process, or with respect to the function, way, result test when such evidence is presented to support a finding of infringement under the doctrine of equivalents." *AquaTex Indus., Inc.*, 479 F.3d at 1328 (alteration in original) (emphasis omitted).  While Dr. Peterson's report is "somewhat conclusory," his analysis ultimately "fills in the particulars" by explaining on a claim-by-claim basis—with reference to supporting photographs—why each element of each claimed limitation is present in the RadCad caddy, and

23

alternatively, by explaining the function of each of the components of the RadCad caddy for purposes of the doctrine of equivalents. *See Tyco Healthcare Grp. LP v. Ethicon Endo-Surgery, Inc.*, 514 F. Supp. 2d 351, 372 (D. Conn. 2007) (granting summary judgment of infringement as to certain claims based on doctrine of equivalents analysis that explained the function of the key component of the device accused of infringement, and noting that "the Court's review of the diagrams in the record . . . result[ed] in a conclusion consistent with [the expert's] explanation"); *see also Iscar Ltd. v. Sandvik AB*, 243 F.3d 558 (Table), at *6 (Fed. Cir. 2000) (finding that photographs and engineering drawings of accused products could support an infringement claim); *Snuba Int'l, Inc. v. Dolphin World, Inc.*, 243 F. 3d 761 (Table), at *8 (Fed. Cir. 2000) (finding infringement as a matter of law based on photographs contained in defendants' promotional brochure); *The Goat LLC v. Advanced Wholesale LLC*, No. 23-CV-1526 (JPS), 2024 WL 1603512, at *7 (E.D. Wis. Apr. 12, 2024) (collecting cases holding that liability for patent infringement could be shown by analysis of photograph of allegedly infringing product).

For instance, with respect to Claim 12 of the '648 Patent, Dr. Peterson explains in his report the correspondence between all aspects of the claim language and the features of the RadCad caddy, to support his conclusion that "each clause of claim 12 is literally met by corresponding elements in the RadCad caddy." (Peterson Report at 9–13.) He then goes on to explain, for example:

> The removable bottom alone, or the *combination* of the removable bottom and the underlying detents, perform the same function, *preventing the battery from falling out of the bottom end of the RadCad caddy*, in substantially the same way, *by providing a blocking structure to movement of the battery past a bottom end of the RadCad caddy*, to achieve substantially the same result, *preventing the battery from falling out of the bottom end of the RadCad caddy*.

(*Id.* at 14 (emphasis added).)

Dr. Peterson's testimony is sufficiently particularized to satisfy the function-way-result test under the doctrine of equivalents.  Unlike other analyses that courts have deemed too conclusory to support summary judgment, Dr. Peterson's testimony does not merely recite that the RadCad caddy's removable bottom "perform[s] the same function . . . in substantially the same way . . . to achieve substantially the same result," but instead explains the function that the removable bottom performs, "preventing the battery from falling out of the bottom end of the RadCad caddy"; how it does so, "by providing a blocking structure to movement of the battery past a bottom end of the RadCad caddy"; and the consequence of that function, "preventing the battery from falling out of the bottom end of the RadCad caddy."  (*Id.*); *see Augme Techs., Inc. v. Yahoo! Inc.*, 755 F.3d 1326, 1336 (Fed. Cir. 2014) (affirming summary judgment of non-infringement where expert testimony "offer[ed] no explanation beyond" statements that product would "operate the same," "perform [the functions described in the patent] in essentially the same way," and "would [produce] the same result"); *Stumbo v. Eastman Outdoors*, 508 F.3d 1358, 1365 (Fed. Cir. 2007) (affirming summary judgment of non-infringement where expert only testified that aspects of accused product were not "significantly different" from patented product without explaining "how either . . . operated or how the differences were insubstantial"); *Cambrian Sci. Corp. v. Cox Commc'ns, Inc.*, 617 F. App'x 989, 994 (Fed. Cir. 2015) (affirming summary judgment of non-infringement where expert report was "devoid of . . . linking arguments . . . [or] factual statements").  In turn, this analysis maps onto the Court's claim construction, which defined "bottom wall" as "[a] rigid structure at the bottom end of a battery compartment at least partially closing the bottom end of the compartment to prevent a battery from falling through the bottom of the compartment."  *See Tools II*, 2021 WL 5920142, at *1.  "As a matter of law, there can be no infringement under the doctrine of equivalents '[i]f a theory of equivalence would vitiate a claim

limitation.'" *PC Connector Sols. LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1365 (Fed. Cir. 2005) (quoting *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1160 (Fed. Cir. 1998)); (*see* Peterson Report at 46–49). Dr. Peterson's report contains similar analyses, which are also sufficiently particularized, for Claims 1 and 24 of the '252 Patent and Claims 1 and 13 of the '218 Patent. (Peterson Report at 15–46.)

Even further, Dr. Peterson's report goes on to explain that he tested the RadCad caddy to confirm that the removable bottom "prevent[s] batteries from exiting the caddy" even where the RadCad caddy's detents do not do so. (*See* Peterson Report at 50–51 (opining "that the 'removable bottom' of the RadCad caddy prevents batteries from falling through the bottom end of the compartments" based on Dr. Peterson's tests determining that "simply shaking the RadCad caddy will easily cause the batteries to fall through the bottom end of the compartments" when the bottom wall is not attached, but "the application of force on the bottom wall three times the resistance force of the detents did not dislodge the bottom wall"). *See generally* Dkt. 82-29; Dkt. 93-1.)[10] Based on this testimony—which Defendants do not successfully dispute—there is no material dispute of fact that when the RadCad caddy is equipped with its removable bottom, the RadCad caddy infringes Plaintiff's patents.[11]

---

[10] The Court rejects Defendants' borderline-frivolous suggestion that the RadCad caddy's "removable bottom" does not meet the Court's construction of "bottom wall" because the RadCad caddy's "removable bottom" can also be attached to the "top." (*See* Defs.' Opp'n at 2 (attributing to Plaintiff argument made by Defendants that "when the 'removable bottom' [is] on top, there [is] not infringement").) Given that the RadCad caddy is symmetrical and functions identically whichever way it is flipped, the "removable bottom" functions as the "bottom wall" regardless of the side to which it is attached.

[11] The Court rejects Defendants' arguments that Plaintiff changed its infringement contentions or somehow violated the Court's rules. (*See, e.g.*, Defs.' Opp'n at 3, 6 (asserting that "Plaintiff is on its third set of argument[s] for infringement" and that Plaintiff "ignored Local Patent Law Rule 9 by not updating the Infringement Contentions").) As Plaintiff points out, "Plaintiff has not 'asserted a completely new theory of infringement'" because Plaintiff's infringement contentions "identified the RadCad caddy's removable bottom as the claimed bottom

Second, even if Dr. Peterson's testimony were to leave open a material dispute of fact as to the question of infringement, Defendants' own admissions are material evidence that would preclude a reasonable jury from finding non-infringement.  Among other admissions, Defendants admitted in their RFA responses (*see supra* Background Section II)—or did not dispute statements in Plaintiff's Local Rule 56.1 statement[12]—that the RadCad caddy:

- is a "battery holding and dispensing apparatus for holding and dispensing elongated cylindrical batteries," (*compare* Pl.'s 56.1 ¶ 75; Gabriel Decl. ¶ 20, Ex. 18, at 20, RFA 58, *with* '648 Patent, Dkt. 82-5, at ECF 16 ¶ 12; '252 Patent, Dkt. 82-6, at ECF 23–24 ¶¶ 1, 24; '218 Patent, Dkt. 82-7, at ECF 23–24 ¶¶ 1, 13);

- made of a unitary injection molded plastic, (*compare* Pl.'s 56.1 ¶¶ 81–82; Gabriel Decl. ¶ 20, Ex. 18, at 25–26, RFA 67, 70, *with* '252 Patent, Dkt. 82-6, at ECF 24 ¶ 24; '218 Patent, Dkt. 82-7, at ECF 23 ¶ 1);

- that comprises "a frame sized and configured to be held and supported in a user's hand, that includes a plurality of compartments, each compartment having sidewalls to hold an AA battery with longitudinal axes of the AA battery in an upright orientation," i.e., side-by-side in parallel, (*compare* Pl.'s 56.1 ¶ 77; Gabriel Decl. ¶ 20, Ex. 18, at 21, RFA 60, *with* '648 Patent, Dkt. 82-5, at ECF 16 ¶ 12; '252 Patent, Dkt. 82-6, at ECF 23–24 ¶¶ 1, 24; '218 Patent, Dkt. 82-7, at ECF 23–24 ¶¶ 1, 13);

- where "each compartment is sized and configured to closely conform to the shape and size of the outside perimeter of an AA battery," (*compare* Pl.'s 56.1 ¶ 76; Gabriel Decl. ¶ 20, Ex. 18, at 20–21, RFA 59, *with* '252 Patent, Dkt. 82-6, at ECF 23 ¶ 1; '218 Patent, Dkt. 82-7, at ECF 23 ¶ 1);

---

wall and identified the RadCad caddy's detents [as] the claimed protrusion," and "[t]he Court's claim construction of 'bottom wall' and 'protrusion into each compartment' did not require a change to [Plaintiff's] infringement contentions."  (Pl.'s Reply at 11–12; *see also* Dkt. 82-8 at 8 (identifying removable bottom as holding battery in compartment, with respect to Claim 12 of the '648 Patent); *id.* at 13 (same, with respect to Claim 1 of the '252 Patent); *id.* at 18 (same, with respect to "[t]he combination according to" Claim 24 of the '252 Patent); *id.* at 20–21 (same, with respect to Claim 1 of the '218 Patent); *id.* at 24–25 (same, with respect to Claim 13 of the '218 Patent).)

[12] Under this district's local rules, each paragraph in the moving party's 56.1 statement "will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."  Local Rules of the United States District Courts for the Southern and Eastern Districts of New York 56.1(c).

- with "each sidewall having an opening wherein a user can touch with a finger the battery held in the compartment through the opening," (*compare* Pl.'s 56.1 ¶ 80; Gabriel Decl. ¶ 20, Ex. 18, at 23–24, RFA 65, *with* '648 Patent, Dkt. 82-5, at ECF 16 ¶ 12; '252 Patent, Dkt. 82-6, at ECF 24 ¶ 24; '218 Patent, Dkt. 82-7, at ECF 23–24 ¶¶ 1, 13); and

- through which "a battery can be displaced from a compartment," i.e., removed with the user's finger, "by forcibly deflecting the detents located adjacent either end" of the compartments, (*compare* Pl.'s 56.1 ¶ 89; Gabriel Decl. ¶ 20, Ex. 18, at 21, RFA 76, *with* '648 Patent, Dkt. 82-5, at ECF 16 ¶ 12; '252 Patent, Dkt. 82-6, at ECF 23–24 ¶ 1; '218 Patent, Dkt. 82-7, at ECF 23–24 ¶¶ 1, 13).

(*See also* Defs.' Opp'n at 10–13 (not disputing the foregoing).)

These admissions plainly support the conclusion that the RadCad caddy infringes Plaintiff's patents either literally or under the doctrine of equivalents.  Although Defendants dispute that the RadCad caddy's removable bottom constitutes a "bottom wall" for purposes of Plaintiff's patents, (*see, e.g.*, '218 Patent, Dkt. 82-7, at ECF 23–24 ¶¶ 1, 13), Dr. Peterson's report is clear evidence to the contrary.[13]  *See supra*.  As is Defendants' admission that "the 'removable

---

[13] Defendants belatedly assert that Claim 24 of the '252 Patent is invalid because it references only "a detent," i.e., "a single detent," without a "bottom wall," which means that the invention cannot retain a battery in the compartment and is thus "inoperable."  (*See* Defs.' Opp'n at 7.)  However, the Federal Circuit has made clear that a claim's "use of 'a' or 'an' before a noun naming an object is understood to mean 'one or more' unless the context sufficiently indicates otherwise."  *Lite-Netics, LLC v. Nu Tsai Cap. LLC*, 60 F.4th 1335, 1345 (Fed Cir. 2023).  Thus, Defendants' assertion that Claim 24's reference to "a detent" can only mean one detent is simply incorrect.  Indeed, the Court previously ruled that "[t]he specifications for each [of Plaintiff's] patent[s] clarify that . . . [there is] an embodiment where '[e]ach bay includes *one or two* detents[,]'" and that, therefore, "the patents *do* allow for an embodiment 'in which there is no bottom wall and batteries are held in compartments with a detent above and below the batteries.'"  *Tools II*, 2021 WL 5920142, at *16 (emphasis added).  As for Defendants' argument that Claim 24's file history shows that an embodiment with two detents is invalid based on prior art, (*see* Defs.' Opp'n at 17–18), Defendants fail to show invalidity based on "clear and convincing evidence."  The evidence that Defendants rely on in making this argument relate to "Claims 1 and 9" of the '252 Patent—not Claim 24—which were ultimately allowed after being rejected initially.  (Defs.' Mem. at 21 (citing "Claims 1 and 9" of Dkt. 80-12); Dkt. 80-12 ¶ 9 (containing language as "Claim 9" ultimately allowed as Claim 8 of '252 Patent); '252 Patent, Dkt. 82-6, at ECF 24 ¶ 8.)  In any event, the '252 Patent ultimately contains a claim "compris[ing] a detent adjacent *each* end protruding into said compartment."  ('252 Patent, Dkt. 82-6, at ECF 24 ¶ 8); *Mosaic Brands, Inc. v. Ridge Wallet LLC*, 55 F.4th 1354, 1362 (Fed. Cir. 2022) ("[A] moving party seeking to invalidate a patent at summary judgment must submit such clear and convincing

bottom' prevents the detent adjacent the first end of the compartment from functioning to releasably retain the battery within the compartment at the first end of the RadCad battery caddy." (Pl.'s 56.1 ¶ 95; Gabriel Decl. ¶ 20, Ex. 18, at 31, RFA 82; *see also* Pl.'s 56.1 ¶¶ 87–95; Gabriel Decl. ¶ 20, Ex. 18, at 27–31.)  Combined, this evidence demonstrates that the "removable bottom" functions as a "bottom wall": "[a] rigid structure at the bottom end of a battery compartment at least partially closing the bottom end of the compartment to prevent a battery from falling through the bottom of the compartment."  *See Tools II*, 2021 WL 5920142, at *1.  Together, Defendant's admissions and Dr. Peterson's analysis of the RadCad caddy's components track the elements of each Asserted Claim and establish that there is no genuine dispute of material fact that each element of each Asserted Claim is literally present in the RadCad caddy or present under the doctrine of equivalents.[14]  (*Compare, e.g.*, Peterson Report at 17–19 (discussing centerline for purposes of '252 Patent), *with, e.g.*, Dkt. 82-27 at ECF 4 (showing "centerline" present in RadCad caddy).)

Third, along those lines, Defendants' principal, Berkowitz, testified that once the RadCad caddy's removable bottom "is attached . . . you would not be able to remove the battery from that side that the marker plate was attached to."  (Berkowitz Tr. at 249:8–14; *see id.* at 239:20–22.)  Lastly, Berkowitz testified that it is possible to "remove the battery from the side opposite the second piece even [if] it was retained in the caddy," because "that side is not being physically blocked" by the removable bottom due to the removable bottom being designed to "overlap[]

---

evidence of facts underlying invalidity that no reasonable jury could find otherwise." (quoting *SRAM Corp. v. AD-II Eng'g, Inc.*, 465 F.3d 1351, 1357 (Fed. Cir. 2006))).

[14]  The Court does not consider Defendants' arguments in their December 29, 2021, summary judgment motion—which was withdrawn—to be "admissions" or evidence.  Attorney argument is not evidence.  *Icon Health & Fitness, Inc. v. Strava, Inc.*, 849 F.3d 1034, 1039 (Fed. Cir. 2017).

partially into the area that the battery would come out of on that side of the product[.]" (*Id.* at 250:5–18.) This testimony, directly from Defendants, is further evidence that leaves no dispute of material fact that, at least when the RadCad caddy's removable bottom is attached to the RadCad caddy, the removable bottom functions as a bottom wall and that the RadCad caddy infringes Plaintiff's patents. *See Broadcom*, 732 F.3d at 1333.

Finally, although Defendants argue that the RadCad caddy does not infringe because the RadCad caddy's detents prevent batteries from falling out of the caddy when the removable bottom is removed, (*see* Defs.' Opp'n at 4, 6, 18, 20), "an accused device that sometimes, but not always, embodies a claim[ ] nonetheless infringes." *Broadcom*, 732 F.3d at 1333 (quoting *Bell*, 55 F.3d at 622–23). Dr. Peterson's report confirms that "[w]hen the RadCad caddy is loaded with batteries . . . [and] the removable bottom [is] at the bottom, the batteries rest on the removable bottom and do not touch the adjacent, underlying detents." (Peterson Report at 47 (referring to Photo 4B); *see* Dkt. 82-27 at ECF 5 (depicting, in annotated Photo 4B, "contact between battery and bottom wall," but a "gap between [the] bottom detent and battery").) Defendants do not demonstrate otherwise.

Accordingly, the Court grants Plaintiff's motion for summary judgment of infringement.

## IV.    Plaintiff's Motion to Strike and Motion for Summary Judgment of Non-Infringement

In light of the Court's grant of summary judgment of infringement in favor of Plaintiff, the Court denies as moot Plaintiff's motion to strike Defendants' reply brief and reply Local Rule 56.1 statement in support of their motion for summary judgment of non-infringement, and denies as moot Defendants' motion for summary judgment of non-infringement. *Cf. Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*, No. 11-CV-5379 (CM) (JLC), 2012 WL 1223928, at *1 (S.D.N.Y. Apr. 11, 2012) (noting that summary judgment of non-infringement "automatically requires the [c]ourt to

deny [a] cross-motion for summary judgment of infringement" because it "moots all other motions for summary judgment").

## CONCLUSION

For all the foregoing reasons, the Court denies Defendants' motion to strike Plaintiff's expert testimony.  The Court grants Plaintiff's motion for summary judgment of infringement with respect to Claim 12 of the '648 Patent; Claims 1 and 24 of the '252 Patent; and Claims 1 and 13 of the '218 Patent.  The Court denies as moot Plaintiff's motion to strike Defendants' reply brief and reply Local Rule 56.1 statement in support of their motion for summary judgment of non-infringement.  The Court denies as moot Defendants' motion for summary judgment of non-infringement.  The Court dismisses Plaintiff's remaining claims of infringement as voluntarily abandoned.  The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 30, 2024
        Brooklyn, New York