UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
TOOLS AVIATION, LLC,

                          Plaintiff,                   **MEMORANDUM & ORDER**

         - against -                        20-CV-2651 (PKC) (VMS)

DIGITAL PAVILION ELECTRONICS LLC,
EAST BROOKLYN LABS LLC, and
FIREMALL LLC,

                          Defendants.
----------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

      Plaintiff Tools Aviation, LLC ("Plaintiff") brings this patent infringement action against Defendants Digital Pavilion Electronics LLC ("Digital"), East Brooklyn Labs LLC ("East Brooklyn"), and Firemall LLC ("Firemall") (collectively, "Defendants"), for selling "battery caddies" that infringe on three of Plaintiff's patents. (*See generally* Compl., Dkt. 1.) On September 30, 2024, the Court granted Plaintiff's motion for summary judgment, finding infringement as a matter of law with respect to Claim 12 of U.S. Patent No. 7,287,648 ("'648 Patent"); Claims 1 and 24 of U.S. Patent No. 8,267,252 ("'252 Patent"); and Claims 1 and 13 of U.S. Patent No. 9,022,218 ("'218 Patent"). *See Tools Aviation, LLC v. Digit. Pavilion Elecs. LLC*, No. 20-CV-2651 (PKC) (VMS), 2024 WL 4350466 (E.D.N.Y. Sep. 30, 2024). Plaintiff now moves this Court for the following: (1) a finding that Defendants' infringement was willful; (2) a finding that this case is "exceptional" such that Plaintiff is entitled to attorney's fees and costs; and (3) a permanent injunction. (Pl.'s Mot., Dkt. 100.) For the reasons set forth below, the Court finds this case "exceptional" pursuant to 35 U.S.C. § 285 and thus grants Plaintiff's motions for reasonable attorney's fees and a permanent injunction, but declines to reach the issue of willful infringement.

**BACKGROUND**

The Court assumes the parties' familiarity with the factual and procedural background of this case, which is set forth in detail in this Court's previous decisions, *see Tools Aviation, LLC v. Digit. Pavilion Elecs. LLC* ("*Tools I*"), No. 20-CV-2651 (PKC), 2021 WL 4340949 (E.D.N.Y. Sep. 23, 2021) (granting Plaintiff's motion to dismiss Defendants' counterclaim); *Tools Aviation, LLC v. Digit. Pavilion Elecs. LLC* ("*Tools II*"), No. 20-CV-2651 (PKC) (VMS), 2021 WL 5920142 (E.D.N.Y. Dec. 15, 2021) (ruling on claim construction); *Tools Aviation, LLC v. Digit. Pavilion Elecs. LLC* ("*Tools III*"), No. 20-CV-2651 (PKC) (VMS), 2024 WL 4350466 (E.D.N.Y. Sep. 30, 2024) (granting Plaintiff's motion for summary judgment of infringement, *inter alia*). The Court briefly recites the facts most relevant to Plaintiff's pending motions.

**I.    Relevant Factual Background**

Plaintiff makes and sells a "battery caddy" under the trademarks Storacell® and Powerpax® (the "Storacell®"). (Compl., Dkt. 1, ¶¶ 20–21; Foreman Decl., Dkt. 100-2, ¶ 4.) The Storacell® was intended to be used by pilots for storing and dispensing AA batteries in emergencies, but also serves as a compact battery storage method for use in homes, cars, offices, and shops. (Compl., Dkt. 1, ¶ 22; Foreman Decl., Dkt. 100-2, ¶¶ 5–6.) The United States Patent and Trademark Office ("PTO") issued three patents to Plaintiff for its battery caddy design: the '648 patent in 2007, entitled "Battery Holder and Dispenser," (Dkt. 1-1); the '252 Patent in 2012, entitled "Battery Holder and Dispensing Package," (Dkt. 1-2); and the '218 Patent in 2015, entitled "Battery Holder and Dispensing Package," (Dkt. 1-3).

Defendants sell and distribute a battery charger with a battery caddy called the "RadCad Battery Charger and Caddy for AA Rechargeable Batteries" (the "RadCad"), as well as separate battery caddies called the "East Brooklyn Labs Durable AA Battery Storage" (the "RadCad

2

Caddy"), on Amazon.com ("Amazon") and other websites. (Compl., Dkt. 1, ¶¶ 3–4, 6–7, 9–10.) Defendants began selling these products online, including on Amazon, sometime before October 16, 2019. (*Id.* ¶ 25.) On October 17, 2019, Digital began receiving complaint notices through Amazon, filed by a relative of Plaintiff's president, indicating that Defendants' sales of the RadCad infringed on Plaintiff's patents, leading to pre-suit correspondence between the parties disagreeing over whether there had been infringement. *See Tools I*, 2021 WL 4340949, at *1; (Third Am. Answer, Dkt. 24, ¶¶ 118–25).

## II. Relevant Procedural Background

Plaintiff filed this patent infringement suit against Defendants on June 15, 2020, alleging that Defendants' sale of the RadCad and RadCad Caddy infringed on Plaintiff's '648, '252, and '218 Patents. (*See* Compl., Dkt. 1.) Defendants filed an Amended Answer on September 24, 2020, which included a counterclaim against Plaintiff seeking declaratory judgment for patent non-infringement and tortious interference. (Am. Answer, Dkt. 13, ¶¶ 131–40.) Defendants subsequently agreed to dismiss the non-infringement declaratory judgment portion of the counterclaim but retained the counterclaim for tortious interference in their Third Amended Answer, the operative answer. (*See* Defs.' Ltr., Dkt. 19, at 2; Third Am. Answer, Dkt. 24, ¶¶ 135–40.) Plaintiff moved to dismiss Defendants' counterclaim, and on September 23, 2021, the Court granted Plaintiff's motion on the grounds that Defendants' counterclaim was preempted by federal patent law. *Tools I*, 2021 WL 4340949, at *1, 5. After a claim construction hearing, on December 15, 2021, the Court adopted constructions of two disputed terms relevant to the patents at issue, *Tools II*, 2021 WL 5920142, at *1, and this case proceeded with discovery.

After the close of discovery in 2023, Plaintiff moved for summary judgment and Defendants cross-moved for summary judgment along with a request to strike portions of

3

Plaintiff's expert testimony. (*See* Dkts. 74–85.) On September 30, 2024, the Court denied Defendants' motion to strike Plaintiff's expert testimony, granted Plaintiff's motion for summary judgment of infringement, and denied as moot Defendants' motion for summary judgment of non-infringement.[1] *Tools III*, 2024 WL 4350466, at *1. The Court rejected Defendants' assertion that Plaintiff's expert witness Dr. Donald Russell Peterson ("Dr. Peterson") was unqualified and that his conclusions were unreliable, and in fact, found his expert opinion sufficient to establish infringement as a matter of law on summary judgment. *Id.* at *6–9. The Court found that, based on Dr. Peterson's report, there was "no genuine dispute of material fact that all of Plaintiff's claimed limitations are present in Defendants' RadCad Caddies," and further that "Defendants' own admissions are material evidence that would preclude a reasonable jury from finding non-infringement." *Id.* at *12, 14. In this decision, the Court also addressed defense counsel's "concerning conduct" in litigating this matter, which it found to be both "unprofessional and inappropriate." *Id.* at *5–6.

Following this decision, Plaintiff filed its pending motion requesting a finding of willful infringement, that this case be deemed "exceptional" such that Plaintiff is entitled to recover attorney's fees and costs, and a permanent injunction. (Pl.'s Mot., Dkt. 100.) The motion was fully briefed as of December 17, 2024. (*See* Dkts. 98–102.) On June 12, 2025, the Court requested clarification from Plaintiff regarding its intention to seek monetary damages in this action in addition to attorney's fees and injunctive relief, to which Plaintiff timely responded. (6/12/2025 Dkt. Order; Dkt. 105.)

---

[1] The Court notes that in entering its order granting summary judgment for Plaintiff on September 30, 2024, it directed the Clerk of Court to "close this case." (*See* 9/30/2024 Dkt. Order.) This direction was an administrative oversight, and as the issue of damages has not yet been resolved, the Court shall direct the Clerk of Court to reopen this matter for consideration of the remaining issues.

4

## DISCUSSION

### I. Plaintiff's Motion for an "Exceptional" Case Finding and Attorney's Fees

Plaintiff moves this Court for a finding that this is an "exceptional" case such that Plaintiff is entitled to its reasonable attorney's fees under 35 U.S.C. § 285 ("Section 285"). (*See* Pl.'s Mem. Supp. Mot. ("Pl.'s Br."), Dkt. 100-1.) To support its motion, Plaintiff also seeks a finding that Defendants' infringement was willful. (*Id.* at 1, 18.) For the reasons explained below, the Court declines to reach the issue of willful infringement but nonetheless finds that this case is "exceptional" and that Plaintiff is entitled to its reasonable attorney's fees under Section 285.

#### A. Legal Standard

Pursuant to Section 285 of the Patent Act, "[t]he court in exceptional cases may award reasonable attorney['s] fees to the prevailing party."[2] 35 U.S.C. § 285. In 2014, in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, the Supreme Court held that an "exceptional" case is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." 572 U.S. 545, 554 (2014). In doing so, it rejected the rigid framework set forth by the Federal Circuit in *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378 (Fed. Cir. 2005), finding that it was "so demanding that it would appear to render [Section 285] largely superfluous." *Id.* at 557. Now, "[d]istrict courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* at 554. The moving party need not establish entitlement to fees under Section 285 by "clear and convincing evidence;" rather, "Section 285 demands a simple discretionary inquiry," based on a "preponderance of the evidence standard." *Id.* at 557.

---

[2] The parties do not dispute that Plaintiff is the prevailing party.

5

### B. Willful Infringement Finding Unnecessary

Plaintiff seeks a finding of willful infringement given its relevance to the exceptional case analysis, arguing that Plaintiff "has demonstrated by a preponderance of the evidence that the risk of infringement was either known or so obvious that it should have been known to Defendants such that Defendants' infringement should be found willful." (Pl.'s Br., Dkt. 100-1, at 18.) However, the Court finds that it is unnecessary to make a factual determination on this issue, and thus declines to do so.

Willfulness is "among the reasons that a court may find a case to be exceptional," *Therasense, Inc. v. Becton, Dickinson & Co.*, 745 F.3d 513, 516 (Fed. Cir. 2014), but it is not dispositive, *see SiOnyx LLC v. Hamamatsu Photonics K.K.*, 981 F.3d 1339, 1354–55 (Fed. Cir. 2020). "*Octane Fitness* establishes no presumption—rebuttable or otherwise—that cases involving willful infringement are necessarily 'exceptional.'" *4 Pillar Dynasty LLC v. New York & Co., Inc.*, 933 F.3d 202, 216 (2d Cir. 2019). Willful infringement is typically a question of fact that "should be resolved by the jury." *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016).

Here, Plaintiff did not raise the issue of willful infringement on summary judgment, nor has it been heard by a jury. Still, the Court may evaluate questions of fact for purposes of the attorney's fees analysis because "there is no right to a jury trial for attorney's fees under [Section 285]," and district courts are not prevented from making additional findings "when deciding equitable issues" even if it speaks to a party's "state of mind, intent, and culpability." *AIA Am., Inc. v. Avid Radiopharmaceuticals*, 866 F.3d 1369, 1374 (Fed. Cir. 2017). Furthermore, district courts may consider fresh issues "that were not fully litigated before the court" on an attorney's fees motion. *Munchkin, Inc. v. Luv n' Care, Ltd.*, 960 F.3d 1373, 1378 (Fed. Cir. 2020).

6

At the same time, the Federal Circuit has also "made abundantly clear that district courts have wide latitude 'to *refuse* to add to the burdens of litigation by opening up issues that have not been litigated but are asserted as bases for a fee award.'" *Id.* (quoting *Thermolife Int'l LLC v. GNC Corp.*, 922 F.3d 1347, 1357 (Fed. Cir. 2019) (emphasis in original).

Furthermore, willfulness is not only relevant to the issue of attorney's fees, it may also serve as a basis to award enhanced damages under 35 U.S.C. § 284 ("Section 284"). 35 U.S.C. § 284 ("[T]he court may increase the damages up to three times the amount found or assessed."); *see Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103–04 (2016). With respect to the right to a jury trial, the issue of willful infringement is treated differently when pleaded as a basis to enhance damages under Section 284 from when it is only asserted as a basis for recovering fees under Section 285. *See, e.g.*, *NIKE, Inc. v. Skechers U.S.A., Inc.*, No. LA-CV-1708509 (JAK) (EX), 2020 WL 10486482, at *19–21 (C.D. Cal. Oct. 26, 2020) (granting bifurcation request for willful infringement when only asserted as a basis for fees under Section 285, noting the "distinction between a willfulness determination pursuant to [Section 284] and an exceptional case determination under [Section 285]").

In connection with the briefing of the instant motions, the Court sought clarification from Plaintiff on whether it still intends to seek damages and if that request should be litigated prior to the Court ruling on its motions for attorney's fees and injunctive relief. (6/12/2025 Dkt. Order.) Plaintiff's response indicated that, while it still intends to seek damages, this did not preclude the Court from resolving the present motions, which it claims are of "greater importance." (Pl.'s Ltr., Dkt. 105, at 2.) Yet it remains unclear whether Plaintiff seeks to pursue enhanced damages under Section 284 based on a finding of willful infringement. Plaintiff's Complaint certainly seems to

7

contemplate this type of relief. (Compl., Dkt. 1, at 21 (requesting Defendants "be ordered to pay to the Plaintiff treble damages for willful infringement").)

Ultimately, as discussed *infra*, the Court is satisfied that there exist additional bases to find that this case is "exceptional" under Section 285, regardless of whether Defendants' infringement was willful. For the foregoing reasons, and because the issue of willful infringement is not dispositive to the exceptional case analysis on a motion for attorney's fees, the Court declines to reach the factual question of willful infringement for purposes of the present motions.

### C. Exceptional Case

A district court may find a case "exceptional" when it "stands out from the others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) *or* the unreasonable manner in which the case was litigated." *Octane Fitness, LLC*, 572 U.S. at 554 (emphasis added). This determination is based on the "totality of circumstances," which may include, *inter alia*, "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 554 n.6. Plaintiff asserts that this is an "exceptional" case because of Defendants' weak defenses and litigation misconduct. (Pl.'s Br., Dkt. 100-1, at 13–17.) The Court agrees.

With respect to the substantive strength of Defendants' litigating position, the Court notes that there was sufficient evidence to grant summary judgment in favor of Plaintiff, finding that Defendants' RadCad and RadCad Caddy infringed Plaintiff's patents for the Storacell® as a matter of law. *Tools III*, 2024 WL 4350466, at *9. Though is it the "'substantive strength of the party's litigating position' that is relevant to an exceptional case determination, not the correctness or

eventual success of that position," *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1348 (Fed. Cir. 2015), Defendants' positions were both unsuccessful *and* remarkably weak.

On summary judgment, the Court found that Defendants' own factual admissions were "material evidence that would preclude a reasonable jury from finding non-infringement." *Tools III*, 2024 WL 4350466, at *14. To the extent Defendants disputed that "the RadCad caddy's removable bottom constitutes a 'bottom wall' for purposes of Plaintiff's patents," the Court determined that "Dr. Peterson's report is clear evidence to the contrary." *Id.* The Court found that Defendants' argument that the "removable bottom" could not meet the Court's construction of "bottom wall" because it could be attached to the "top" of the RadCad caddy was "borderline-frivolous." *Id.* at 13 n.10. Defendants then asserted that the "RadCad caddy does not infringe because the RadCad caddy's detents prevent batteries from falling out of the caddy when the removal bottom is removed;" but it is "well settled that an accused device that 'sometimes, but not always, embodies a claim[] nonetheless infringes.'" *Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1333 (Fed. Cir. 2013) (citation omitted).

Defendants' remaining, "belatedly assert[ed]" invalidity defenses were summarily rejected as "simply incorrect." *Tools III*, 2024 WL 4350466, at *14 n.13. Though Defendants now argue that they believed their defenses credible, (Defs.' Opp'n Br. ("Defs.' Br"), Dkt. 104, at 15), Defendants' submissions on summary judgment were devoid of "meaningful analysis or application of relevant legal standards to the facts at hand." *Tools III*, 2024 WL 4350466, at *5. And, once again, Defendants' submission in opposition to the pending motions is similarly lacking in citations to legal authority and meaningful analysis. (*See* generally, Defs.' Br., Dkt. 104.) Thus, even in the absence of an affirmative finding of willful infringement, Defendants' litigating positions were notably weak—and at times borderline frivolous—which weighs in favor of finding

9

that this case "stands out from others." *Octane Fitness, LLC*, 572 U.S. 545 at 554; *see SRI Int'l, Inc. v. Cisco Sys., Inc.*, 14 F.4th 1323, 1332 (Fed. Cir. 2021) (affirming district court's finding that the case was "exceptional" and its award of fees to the patentee, in the absence of a willfulness finding, where defendant's "entire case was weak, yet it pursued the case aggressively and in an unreasonable manner anyway").

The Court also finds that the "unreasonable manner in which the case was litigated" by Defendants supports Plaintiff's assertion that this case is "exceptional." *Octane Fitness, LLC*, 572 U.S. at 554. In fact, the Court dedicated an entire section of its decision on summary judgment and Defendant's motion to strike to addressing defense counsel's "unprofessional and inappropriate behavior." *Tools III*, 2024 WL 4350466, at *5–6. In addition to Defendants' "exiguous legal analysis," the Court highlighted the following "concerning" conduct:

> Throughout Defendants' four major submissions presently before the Court—Defendants' brief in support of their motion for summary judgment, reply in support of their motion for summary judgment, opposition to Plaintiff's motion to strike Defendants' reply, and opposition to Plaintiff's motion for summary judgment—defense counsel has engaged in numerous personal attacks on opposing counsel and witnesses, including arguments based on unfounded, self-serving interpretations of their personal beliefs and misrepresentations about the contents of Plaintiff's submissions. (*Compare* Defs.' Mem. at 19 ("It is embarrassing to see [Plaintiff's expert witness,] Prof. Peterson[,] view ordinary people as being very ignorant."), *with* Peterson Report (not discussing or referring at all to Dr. Peterson's personal views on "ordinary people"); *see* Defs.' Mem. at 24–25 (calling Dr. Peterson's work a "sloppy mental experiment" and referring to Defendants' own interpretation of Dr. Peterson's report as "obvious[ly]" correct); Strike Opp'n at 3 ("It is surprising to see two experienced attorneys treat a significant legal issue with indifference."); *id.* (raising "the question of the sincerity of Plaintiff's legal research" and Plaintiff's "professional fairness" based on the existence of Plaintiff's submission opposing Defendants' reply 56.1 statement).) In particular, defense counsel's assertions that Dr. Peterson "may not possess sufficient understanding of the English language to understand a patent claim," that Dr. Peterson "would [be] embarrass[ed]" if he presented his "report[ ] at an engineering conference," and that "the attorneys for Plaintiff welcome[ ] any dispute that generate[s] work for them," cross the line between colorful legal rhetoric and gratuitous, baseless disparagement. (Defs.' Mem. at 13, 26, 30.)

10

*Tools III*, 2024 WL 4350466, at *5.

Defendants attempt to argue that it was Plaintiff, not Defendants, that engaged in unreasonable conduct, unnecessarily prolonging this litigation by "ignoring the Court" after it "suggested to Plaintiff three separate times to consider mediation." (Defs.' Br., Dkt. 104, at 2.) However, as Plaintiff argues, "[t]here is no support in the law that a plaintiff has an obligation to seek settlement through mediation or otherwise in order to be entitled to a finding of exceptional case," (Pl.'s Reply, Dkt. 102, at 2), nor do Defendants point to any authority for this position. To the contrary, as illustrated here, it is Defendants who exceeded the bounds of zealous client advocacy and wasted both Plaintiff's and the Court's time with *ad hominum* attacks and undeveloped legal arguments. This is precisely the type of misconduct the Court may consider in determining whether a case is "exceptional" under Section 285. *See Octane Fitness, LLC*, 572 U.S. at 555 (noting the relevance of litigation related misconduct, including vexatious litigation, but holding it need not be "independently sanctionable" to justify an exceptional case finding); *Drop Stop LLC v. Jian Qing Zhu*, 757 F. App'x 994, 998–99 (Fed. Cir. 2019) (affirming district court's exceptional case determination based on Defendants' "problematic conduct" over the course of the litigation).

Finally, though Defendants highlight Plaintiff's concession that money damages from Defendants' sales of the infringing product are likely low, (Defs.' Br., Dkt. 104, at 16–17), the Court does not find this particularly relevant to the attorney's fees analysis. Whether Plaintiff in fact obtains damages from the litigation is not the relevant inquiry; rather, it is when a plaintiff, for example, "insist[s] on pursuing an inflated award while at the same time failing to adduce admissible evidence to support that award during discovery," that the amount of damages may be pertinent. *Makina Ve Kimya Endustrisi A.S. v. A.S.A.P. Logistics LTD*, No. 22-CV-3933 (AS),

11

2025 WL 1742570, at *2 (S.D.N.Y. June 24, 2025); *see also Hunter Douglas Inc. v. Great Lake Woods*, *Inc.*, No. 15-CV-0106 (REB) (KLM), 2019 WL 1375675, at *16 (D. Colo. Mar. 27, 2019) (finding case exceptional and awarding patentee fees where defendants pursued "meritless claims for invalidity and non-infringement," noting that even though plaintiff's claims "may be of small monetary value, the claims are vital to the survival of their businesses and competitive market position"). Here, there is no indication that Plaintiff needlessly pursued inflated claims of monetary damages in such a way to protract this litigation. To the contrary, Plaintiff has repeatedly clarified that, while this is not a case of high damages, it sought additional forms of relief for Defendants' infringement, including a permanent injunction against Defendant's ongoing infringement.

Thus, based on a totality of the circumstances, including "the substantive strength of [Defendants'] litigating position" and "the unreasonable manner in which the case was litigated," the Court finds that this case is "exceptional" under Section 285, *Octane Fitness, LLC*, 572 U.S. at 554, and that Plaintiff is entitled to reasonable attorney's fees.

## II.     Plaintiff's Motion for a Permanent Injunction

Plaintiff seeks a permanent injunction enjoining Defendants from continuing to infringe on Plaintiff's patents, specifically, an order stating that:

> Defendants and their officers, agents, servants, employees, and attorneys, and all those persons in active concert or participation with Defendants (or in active concert or participation with its officers, agents, servants, employees, attorneys) be permanently restrained and enjoined from making, using offering for sale, selling, importing (into), or exporting from the United States: (a) the adjudged RadCad battery caddy found to infringe Claim 12 of the '648 Patent; Claims 1 and 24 of the '252 Patent; and Claims 1 and 13 of the '218 Patent ("Infringed Claims"), (b) any battery caddy that is substantially similar to and/or not colorably different from the adjudged infringing RadCad battery caddies with respect to those elements proven to satisfy the limitations of the Infringed Claims that are configured to infringe the Infringed Claims regardless of battery size.

(Pl.'s Br., Dkt. 100-1, at 24.)  Plaintiff also requests that "third party platforms, including Amazon.com, are ordered to cease all sales of the RadCad caddy, and to freeze Defendants' accounts and that Defendants be ordered, at their own expense, to withdraw from the market, account for and properly destroy any and all RadCad caddies, regardless of battery size." (*Id.*) Finally, Plaintiff requests that "Defendants be ordered to serve on Plaintiff within thirty (30) days after service on Defendants of preliminary or permanent injunctive orders, a report in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction." (*Id.* at 24–25.)  Plaintiff contends that the proposed injunction should remain in effect until the expiration of the patents at issue. (*Id.*)

In support of its motion for injunctive relief, Plaintiff asserts that Defendants have not only "failed to proffer any evidence that they have a viable alternative to continued infringement," but have also "expressed no intention of changing their infringing behavior." (*Id.* at 10.)  Defendants claim that a permanent injunction is unnecessary but fail to cite any case law or legal authority to support their position in their opposition brief. (*See* Defs.' Br., Dkt. 104, at 17–22.)  The Court agrees with Plaintiff that permanent injunctive relief is appropriate in this case.

### A. Legal Standard

Federal district courts have statutory authority to issue injunctions in patent infringement actions.  35 U.S.C. § 283 ("The several courts having jurisdiction of cases under this title may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable.").  A plaintiff seeking a permanent injunction must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is

13

warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). District courts have discretion to analyze and apply each of these factors. *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 861 (Fed. Cir. 2010) ("Factual findings made in support of the injunction are reviewed for clear error; the district court's conclusion as to each *eBay* factor is reviewed for abuse of discretion."), *aff'd*, 564 U.S. 91 (2011).

### B.    Irreparable Harm and Inadequacy of Money Damages

In patent cases, courts often evaluate the first and second factors for permanent injunctive relief—irreparable harm and inadequacy of money damages—in tandem. *See Metso Mins., Inc. v. Powerscreen Int'l Distrib. Ltd.*, 788 F. Supp. 2d 71, 74 (E.D.N.Y. 2011); *Brydge Techs. LLC v. OGadget LLC*, No. 19-CV-5692 (EK) (CLP), 2021 WL 1200316, at *6 (E.D.N.Y. Mar. 4, 2021), *R&R adopted*, 2021 WL 1193003 (E.D.N.Y. Mar. 30, 2021). Irreparable injury in the patent context stems from "the patent holder's statutory right to exclude others from practicing the patent." *Metso Mins., Inc.*, 788 F. Supp. 2d at 74. However, a finding of patent infringement alone is insufficient to establish entitlement to a permanent injunction, and "courts must also look to the business effects of the infringement." *Id.*; *see eBay Inc.*, 547 U.S. at 392–93. "[A] showing that infringement caused a difficult to quantify loss of value in its business—such as market share, goodwill, or reputation—is likely to establish irreparable injury and the inadequacy of money damages." *Kaneka Corp. v. Purestar Chem Enter. Co.*, No. 16-CV-4861 (MKB) (SIL), 2018 WL 3215680, at *4 (E.D.N.Y. May 1, 2018), *R&R adopted*, 2018 WL 3213281 (E.D.N.Y. June 29, 2018).

Plaintiff asserts that injunctive relief is warranted because the parties are direct competitors. (Pl.'s Br., Dkt. 100-1, at 19.) "Where two companies are in competition against one another, the

14

patentee suffers the harm—often irreparable—of being forced to compete against products that incorporate and infringe its own patented inventions." *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013). Defendants do not dispute that the parties are direct competitors and instead argue that Plaintiff has failed to present evidence of any loss of market share. (Defs.' Br., Dkt. 104, at 18.) However, Plaintiff's President Richard Foreman attests in his declaration that Plaintiff created the market for this type of battery caddy and that Defendants' RadCad caddy is the only product on the market similar to Plaintiff's. (Foreman Decl., Dkt. 100-2, ¶¶ 9, 13.) Defendants' President Mitchel Berkowitz also testified in his deposition that he was "not familiar with any other caddies other than East Brooklyn Labs and the Storacell." (Berkowitz Dep., Dkt. 100-4, at 83:4–9.) Where, as here, "the parties are direct competitors in a market that comprises only their products," money damages are often insufficient. *Cognex Corp. v. Microscan Sys., Inc.*, No. 13-CV-2027 (JSR), 2014 WL 2989975, at *2 (S.D.N.Y. June 30, 2014); *see Grp. One Ltd. v. GTE GmbH*, 625 F. Supp. 3d 28, 71 (E.D.N.Y. 2022) ("[B]ecause the parties directly compete in a two-supplier market . . . Defendants' continued infringement will cause Plaintiff to lose actual and potential customers and market share."). Further, "[i]f plaintiffs were forced to accept only monetary damages for continued infringement, the Court would, in effect, grant to defendants a compulsory license, for which the Court has no basis."[3] *Cognex Corp.*, 2014 WL 2989975, at *2. Here, direct competition between the parties in a corner of the market created solely by Plaintiff certainly weighs in favor of finding irreparable harm and inadequacy of money damages, particularly in the absence of evidence from Defendants to the contrary. *See Stein Indus.,*

---

[3] Though not dispositive, the Court notes that Plaintiff has never licensed its patents to competitors. (Foreman Decl., Dkt. 100-2, ¶ 16); *see Metso Mins., Inc.*, 788 F. Supp. 2d at 75 ("[W]hile a patent holder may not show irreparable injury based *solely* on its past refusal to license a patent, courts have nevertheless found that such a refusal to license does weigh in favor of finding irreparable injury.")

*Inc. v. Jarco Indus., Inc.*, 934 F. Supp. 55, 58 (E.D.N.Y. 1996) (finding insufficiently rebutted claims of lost market share enough to show irreparable harm).

Defendants also argue that an injunction is unnecessary because of the serious liability Defendants would face if they continued to infringe. (Defs.' Br., Dkt. 104, at 18.) They assert that they "have taken the issues of infringement seriously, and there is no evidence that Defendants will ignore the Court [r]uling of infringement in the future." (*Id.* at 19.) First, the Court notes that "[t]he fact that the defendant has stopped infringing is generally not a reason for denying an injunction against future infringement unless the evidence is very persuasive that further infringement will not take place." *SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, 396 F. Supp. 3d 323, 346 (S.D.N.Y. 2019) (internal quotations and citation omitted), *modified in part*, No. 18-CV-5427 (JSR), 2019 WL 7816487 (S.D.N.Y. Dec. 11, 2019). Second, and even more compelling, Plaintiff provides evidence suggesting that Defendants *continue* to infringe, even following the Court's finding of infringement on September 30, 2024. Here, along with its reply brief, Plaintiff submitted images of East Brooklyn's Amazon storefront displaying the "RadCad AA Battery Charger," (Dkt. 102-4), an Amazon listing for the "East Brooklyn Labs RadCad Battery Charger," (Dkt. 102-5), and a listing for the "East Brooklyn Labs RadCad Battery Charger and Caddy" on the "Focus Camera" website, (Dkt. 102-6). These images were captured on December 16, 2024, over two months after the Court granted Plaintiff's motion for summary judgment of infringement. (Gabriel Decl., Dkt. 102-1, ¶¶ 5–7.) At the very least, this raises serious doubt about Defendants' claims that they have not only stopped selling the infringing products, but that they have no intention to infringe in the future. "When the conduct is unlikely to cease without an injunction, monetary damages are inadequate." *Brydge Techs. LLC*, 2021 WL 1200316, at *6.

16

Finally, Defendants argue that Plaintiff's failure to seek preliminary injunctive relief in this case weighs against a finding of irreparable harm on a motion for permanent injunction, "because Plaintiff at no time viewed the sales of Defendants [as] causing irreparable damage." (Defs.' Br., Dkt. 104, at 18.)  The Court is also unpersuaded by this argument. *See Metso Mins., Inc.*, 788 F. Supp. 2d at 75–76 (rejecting a similar argument, finding that "the plaintiff's decision not to seek preliminary injunctive relief does not indicate a lack of irreparable harm").  Plaintiff concedes that this is "not a case of high damages," but argues that "the infringing products were always for sale during the relevant time period, sales were never voluntarily ceased, and while damages as calculated on a reasonable royalty basis were nominal, the aggregate number of units sold was certainly not."  (Pl.'s Reply, Dkt. 102, at 3.)  Here, the Court is satisfied that Plaintiff has sufficiently shown irreparable harm based on lost market share from continued infringement, regardless of whether Plaintiff can prove a significant number of lost sales from Defendants' infringement thus far. *See Blumenthal Distrib., Inc. v. Exec. Chair, Inc.*, No. 10-CV-1280 (CBA) (SMG), 2010 WL 5980151, at *13 (E.D.N.Y. Nov. 9, 2010) (noting that "proving loss of sales due to infringement is notoriously difficult"), *R&R adopted*, 2011 WL 839546 (E.D.N.Y. Mar. 3, 2011).

For these reasons, the Court finds that Plaintiff has made the requisite showing for factors one and two: irreparable harm and inadequacy of money damages.

### C.     Balance of Hardships

The third consideration in evaluating whether "a remedy in equity is warranted" is "the balance of hardships between the plaintiff and defendant." *eBay Inc.*, 547 U.S. at 391.  This factor weighs in favor of Plaintiff, as forcing a patentee to compete in the market with its own patented technology is "substantial hardship," particularly "where it is undisputed that it is essentially a

17

two-horse race." *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 646 (Fed. Cir. 2015) (citing *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011)). In contrast, Defendants fail to identify any hardship they would face from an injunction. In fact, in an attempt to argue that they have "no motivation" to continue infringing, Defendants concede that they "have many products" on the market aside from the infringing RadCad caddies. (Defs.' Br., Dkt. 104, at 20.) There is thus no indication that Defendants would suffer any significant hardship from Plaintiff's requested relief. *See i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 862–63 (Fed. Cir. 2010) (finding balance of hardships weighed in patentee's favor where infringing product was only a "small fraction" of defendant's business), *aff'd*, 564 U.S. 91 (2011). The third factor thus weighs in favor of granting Plaintiff a permanent injunction.

**D.      Public Interest**

Finally, the Court must consider whether "the public interest would not be disserved by a permanent injunction." *eBay Inc.*, 547 U.S. at 391. "The public interest nearly always weighs in favor of protecting property rights in the absence of countervailing factors, especially when the patentee practices his inventions." *Apple Inc.*, 809 F.3d at 647. Plaintiff stresses "the strong public interest in the protection of patent rights and the elimination of unfair competition caused by the infringement of those rights." (Pl.'s Br., Dkt. 100-1, at 23.) In response, Defendants reiterate their position that "[t]here is no issue here that the Defendants will resume infringing the asserted patents." (Defs.' Br., Dkt. 104, at 21.) Here, the Court finds that the public interest would not be disserved by an injunction. Enjoining Defendants from selling battery caddies that infringe on Plaintiff's patents "will not result in a socially valuable technology becoming unavailable or substantially more expensive." *Brydge Techs. LLC*, 2021 WL 1200316, at *7 (citing *Metso Mins., Inc.*, 788 F. Supp. 2d at 77). As Plaintiff is currently using its patents and Defendants fail to

18

identify any potential harm to the public, the relief requested "serves the public interest as, here, it appears that any adverse impact is limited to restraining defendant's infringing activity and vindicating plaintiffs' patent rights." *Id.* The fourth factor thus weighs in favor of granting Plaintiff a permanent injunction.

*   *   *

Accordingly, the Court finds that the *eBay* factors weigh in favor of Plaintiff, and grants Plaintiff's motion for a permanent injunction, as modified in the attached Permanent Injunction Order.[4]

## CONCLUSION

For the reasons set forth above, the Court: (1) finds this case to be "exceptional" pursuant to 35 U.S.C. § 285, and accordingly grants Plaintiff's motion for reasonable attorney's fees; and (2) grants Plaintiff's motion for a permanent injunction.

Pursuant to the attached Permanent Injunction Order, within thirty (30) days, Defendants shall serve on Plaintiff a report in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction, and file proof of the same on the docket.

As the issue of damages has yet to be litigated, the Clerk of Court is respectfully directed to reopen this case. Within thirty (30) days of this order, Plaintiff shall file a letter informing the Court whether it still seeks limited discovery on damages and its proposed plan for doing so. The

---

[4] Plaintiff did not submit a proposed permanent injunction order along with its motion, instead listing the requested relief in the body of its brief. (*See* Pl.'s Br., Dkt. 100-1, at 24–25.) The Permanent Injunction Order attached to this Memorandum & Order encompasses almost all of Plaintiff's requested relief with one modification. The Court declines to order third-party platforms such as Amazon "to cease all sales of the RadCad caddy, and to freeze Defendants' accounts." *Id.* The Court does not find it necessary here to extend the order to third parties; Defendants should be able to comply with the remaining terms on their own, which the Court finds sufficient to remedy Plaintiff's harm. Furthermore, in the event Defendants fail to do so, Plaintiff has an adequate remedy against Defendants themselves.

parties shall have an opportunity to brief the amount of attorney's fees and costs to be granted after the amount of damages has been determined.

                                                SO ORDERED.

                                                */s/ Pamela K. Chen*
                                                Pamela K. Chen
                                                United States District Judge

Dated: August 29, 2025
       Brooklyn, New York