UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
TOOLS AVIATION, LLC,

                Plaintiff,

      - against -

DIGITAL PAVILION ELECTRONICS LLC,
EAST BROOKLYN LABS LLC, and
FIREMALL LLC,

                Defendants.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
20-CV-2651 (PKC) (VMS)

PAMELA K. CHEN, United States District Judge:

On August 29, 2025, the Court issued a Memorandum and order ("M&O") granting Plaintiff Tools Aviation, LLC's Motion for Reasonable Attorney's Fees pursuant to 35 U.S.C. § 285 and its Motion for a Permanent Injunction.  (Aug. 2025 M&O, Dkt. 106.)[1]  On September 12, 2025, Defendants Digital Pavilion Electronics LLC, East Brooklyn Labs LLC, and Firemall LLC moved for reconsideration.  (Defs.' Mot. for Recons., Dkt. 110; Defs.' Mem. in Supp. Mot. for Recons. ("Recons. Mot."), Dkt. 112.)  Defendants assert that the award of attorney's fees was procedurally premature, and that the totality of circumstances did not support attorney's fees. (Recons. Mot., Dkt. 112, at 5–11.)  For the following reasons, the Court denies Defendants' Motion for Reconsideration.

---

[1] The August 2025 M&O is reported at *Tools Aviation, LLC v. Digit. Pavilion Elecs. LLC*, 797 F. Supp. 3d 222 (E.D.N.Y. 2025).

**BACKGROUND**

The Court presumes the parties' familiarity with the facts and procedural history of this case, which are set forth in detail in the Court's prior orders. *See Tools Aviation, LLC v. Digit. Pavilion Elecs. LLC*, No. 20-CV-2651 (PKC), 2021 WL 4340949 (E.D.N.Y. Sep. 23, 2021) ("*Tools I*") (granting Plaintiff's motion to dismiss Defendants' counterclaim); *Tools Aviation, LLC v. Digit. Pavilion Elecs. LLC*, No. 20-CV-2651 (PKC) (VMS), 2021 WL 5920142 (E.D.N.Y. Dec. 15, 2021) ("*Tools II*") (ruling on claim construction); *Tools Aviation, LLC v. Digit. Pavilion Elecs. LLC*, No. 20-CV-2651 (PKC) (VMS), 2024 WL 4350466 (E.D.N.Y. Sep. 30, 2024) ("*Tools III*") (granting Plaintiff's motion for summary judgment of infringement, *inter alia*); *Tools Aviation, LLC v. Digit. Pavilion Elecs. LLC*, 797 F. Supp. 3d 222 (E.D.N.Y. 2025) ("*Tools IV*") (granting Plaintiff's request for attorney's fees and permanent injunction).

In the August 2025 Memorandum & Order, the Court found that this was an "exceptional" case warranting reasonable attorney's fees under 35 U.S.C. § 285. (Aug. 2025 M&O, Dkt. 106, at 5.) Specifically, the Court found that, based on the totality of circumstances, this case stood out from others because Defendants' "litigating positions were notably weak—and at times borderline frivolous" and because Defendants engaged in "unprofessional and inappropriate behavior." (*Id.* at 9–10 (citations omitted).) The Court rejected Defendants' argument that fees were not warranted because Plaintiff engaged in unreasonable conduct. "To the contrary," the Court found, "it is Defendants who exceeded the bounds of zealous client advocacy and wasted both Plaintiff's and the Court's time with *ad homin*[*e*]*m* attacks and undeveloped legal arguments." (*Id.* at 11.)

Defendants timely moved for reconsideration. (Recons. Mot., Dkt. 110.)

2

## STANDARD FOR RECONSIDERATION

A motion for reconsideration is the proper vehicle for bringing to the Court's attention matters it may have overlooked in its initial ruling or order.  *See* Loc. Civ. R. 6.3.  "The standard for granting [a reconsideration motion] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (citations omitted); *accord Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (citing *Shrader*, 70 F.3d at 257); *see also* Loc. Civ. R. 6.3 (requiring the moving party to "set[] forth concisely the matters or controlling decisions which the moving party believes the court has overlooked").

At the same time, "reconsideration of a court's previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Hidalgo v. New York*, No. 11-CV-5074 (JS) (GRB), 2012 WL 3598878, at *1 (E.D.N.Y. Aug. 20, 2012) (quoting *Parrish v. Sollecito*, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003)).  For that reason, a motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys*, 684 F.3d at 52 (internal quotation marks omitted) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)); *Premium Sports Inc. v. Connell*, No. 10-CV-3753 (KBF), 2012 WL 2878085, at *1 (S.D.N.Y. July 11, 2012) ("A motion for reconsideration should not be used as a vehicle simply to voice disagreement with the Court's decision . . . ." (citation omitted)). Rather, reconsideration is typically reserved where there is an "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest

3

injustice."[2] *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citations omitted).

## DISCUSSION

### I.   Defendants' Motion Raises Improper Grounds for Reconsideration

Defendants challenge the Court's August 2025 M&O on the basis that: (1) the imposition of attorney's fees was procedurally premature; (2) Defendants advanced meritorious arguments; (3) Defense counsel's misconduct was isolated; (4) Plaintiff wasted the Court's time by seeking a preliminary injunction when the patents would soon expire; and (5) Plaintiff was only seeking nominal damages.   (Recons. Mot., Dkt. 112, at 5–11.)   Defendants' first, third, and fourth arguments were not presented to the Court in the first instance[3]—although they were certainly available.[4]   Defendants are therefore barred from asserting these new issues and arguments on reconsideration.   *See Ayazi v. N.Y.C Dep't of Educ.*, No. 08-CV-2456 (MKB), 2013 WL 310394, at *1 (E.D.N.Y. Jan. 25, 2013) (rejecting a motion for reconsideration because "Plaintiff . . . raises arguments for the first time"), *aff'd*, 586 F. App'x 600 (2d Cir. 2014) (summary order).

---

[2] In the context of a motion for reconsideration, manifest injustice "is defined as 'an error committed by the trial court that is direct, obvious, and observable.'" *Petersen Energia Inversora, S.A.U. v. Argentine Republic*, No. 15-CV-2739 (LAP), 2023 WL 3625784, at *1 (S.D.N.Y. May 24, 2023) (quoting *Corpac v. Does*, 10 F. Supp. 3d 349, 354 (E.D.N.Y. 2013); *Westcon Grp., Inc. v. CCC Techs., Inc.*, No. 19-CV-2303 (PMH), 2023 WL 2058709, at *2 (S.D.N.Y. Feb. 16, 2023)).

[3] Rather, Defendants opposed "exceptional case" fees on other grounds, arguing that exceptional case fees were not warranted because: (1) Plaintiff never moved to compel discovery it claimed was unreasonably delayed; (2) Plaintiff failed to engage in mediation or consider settlement; and (3) Plaintiff "never provided counter-arguments" to Defendants' claims of non-infringement.   (Defs.' Opp'n to Pl.'s Mot. for Exceptional Case Fees, Dkt. 104, at 14–17.)

[4] The status of Plaintiff's patents is not "new evidence" warranting reconsideration, because it was not information that "could not have been found by due diligence." *See Ramgoolie v. Ramgoolie*, No. 22-1409, 2024 WL 4429420, at *5 (2d Cir. Oct. 7, 2024) (summary order) (quoting *Ins. Co. of N. Am. v. Pub. Serv. Mut. Ins. Co.*, 609 F.3d 122, 131 (2d Cir. 2010)).

Defendants previously raised their second argument—that they had advanced meritorious arguments.  (*Compare* Defs.' Opp'n to Pl.'s Mot. for Exceptional Case Fees, Dkt. 104, at 14–15 (asserting that Defendants had raised meritorious arguments at the claim construction stage and in moving to strike Plaintiff's expert report), *with* Recons. Mot., Dkt. 112, at 7 (asserting that Defendants had raised meritorious arguments at claim construction stage and as to the expert report).)  Although Defendants now cite to cases that stand for the general proposition that "fee awards are not to be used 'as a penalty for failure to win a patent infringement suit,'" (Recons. Mot., Dkt. 112, at 7 (citation omitted)), these cases are not intervening changes of controlling law.[5] In fact, the Court previously recognized this general proposition and nonetheless determined that, *inter alia*, Defendants' summary judgment position was so weak as to warrant exceptional case fees.[6]  (*See* Aug. 2025 M&O, Dkt. 106, at 8–9 (explaining that the strength of a position, not the ultimate success of the position, determines whether a case is exceptional).)  In short, Defendants merely use their motion for reconsideration as a vehicle for disagreeing with the Court's prior

---

[5] These cases all pre-date the Court's original decision.  (Recons. Mot., Dkt. 112, at 7–8 (citing *Universal Stabilization Techs., Inc. v. Advanced Bionutrition Corp.*, 2018 WL 6181479, at *4 (S.D. Cal. Nov. 27, 2018); *Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prods., Inc.*, 790 F.3d 1369, 1373 (Fed. Cir. 2015); *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1538 (Fed. Cir. 1991); *Fate Therapeutics, Inc. v. Shoreline Biosciences, Inc.*, 698 F. Supp. 3d 1221, 1228 (S.D. Cal. 2023)).)

[6] Indeed, contrary to what Defendants claim, Defendants' position at summary judgment, due in part to their admissions, was so weak that liability against them could be established under *either* a traditional theory of literal infringement or through the more exceptional doctrine of equivalents.  *Compare Tools III*, 2024 WL 4350466, at *14 ("These admissions [by Defendants] plainly support the conclusion that the [contested device] infringes Plaintiff's patents either literally or under the doctrine of equivalents."), *with* (Recons. Mot., Dkt. 112, at 7–8 (claiming this finding "weighs against an 'exceptional case' finding because '[a]pplication of the doctrine of equivalents is the exception, . . . not the rule.'" (alteration in original) (quoting *London*, 946 F.2d at 1538))).

findings and seeking to re-argue the issue based on pre-existing case law. The Court therefore declines to entertain this argument as grounds for reconsideration.

The Court reaches the same conclusion as to the fifth issue, nominal damages. *See Rives v. SUNY Downstate Coll. of Med.*, No. 20-CV-0621 (RPK) (SMG), 2020 WL 7356616, at *2 (E.D.N.Y. Dec. 14, 2020) (finding reconsideration unjustified on arguments "merely seek[ing] a 'second bite at the apple'" (citing *Analytical Surveys*, 684 F.3d at 52)). Here, too, Defendants merely reassert an existing argument—that a finding of an exceptional case was unwarranted because "Plaintiff informed the Court that the sales of the Defendants was [sic] nominal," (Defs.' Opp'n to Pl.'s Mot. for Exceptional Case Fees, Dkt. 104, at 16)—but now supply supporting citations, (Recons. Mot., Dkt. 112, at 11 (first citing *Polysius Corp. v. Fuller Co.*, 709 F. Supp. 560, 577–78 (E.D. Pa. 1989) (determining an injunction was not warranted where there were effectively no infringing sales, and relying on this factor in part to deny fees), *aff'd sub nom. Polsius Corp. v. Fuller Co.*, 889 F.2d 1100 (Fed. Cir. 1989); and then citing *Lurzer GMBH v. Am. Showcase, Inc.*, 75 F. Supp. 2d 98, 102 (S.D.N.Y. 1998) (describing "few, isolated acts of infringement that formed the basis of the jury's award" as a mitigating factor weighing against an award of fees (citation omitted)))). These cases do not present "controlling decision[s] or data" that this Court overlooked, *Shrader*, 70 F.3d at 257. For one, these cases pre-date the Court's prior decision and thus are not intervening changes of law. Nor do they suggest that the Court committed an error that is "direct, obvious, and observable." *Petersen Energia Inversora, S.A.U. v. Argentine Republic*, No. 15-CV-2739 (LAP), 2023 WL 3625784, at *1 (S.D.N.Y. May 24, 2023) (collecting cases). To the contrary, these cases are distinguishable because Defendants engaged in "continued infringement," (*see* Aug. 2025 M&O, Dkt. 106, at 17 (concluding Plaintiff showed irreparable harm on the basis of continued infringement)), and the number of infringing products Defendants

sold was far from isolated, (*see* Berkowitz Dep. Tr., Dkt. 100-4 at 135, 173–74 (describing the sale of Defendants' products on Amazon); Aug. 2025 M&O, Dkt. 106, at 2–3, 16 (same)).

Because Defendants' reconsideration motion simply recycles old arguments that the Court previously rejected, and fails to identify controlling authority or factual matters that the Court overlooked, the Court denies their Motion for Reconsideration.

## II.    Even Though Defendants Have Not Raised Proper Grounds for Reconsideration, Their Arguments Independently Fail on the Merits

Although Defendants have not raised proper grounds for reconsideration, the Court briefly addresses their arguments to correct several mischaracterizations and explain why they lack merit. *See Greene v. City of New York*, 773 F. Supp. 3d 94, 112 (S.D.N.Y. 2025) ("Even if the Court needed to reach the merits of the motion to reconsider, Defendants' arguments fail."); *RST (2005) Inc. v. Rsch. in Motion Ltd.*, 597 F. Supp. 2d 362, 366 (S.D.N.Y. 2009) (similar).  For the following reasons, the Court's award of exceptional case fees was neither premature nor inappropriate.

### A.    The Court's Award of Fees Was Not Premature

Defendants' claim that the Court's award of exceptional case fees was premature is without merit.  Judges have discretion to impose attorney's fees prior to the entry of judgment.  "Unless a statute or a *court order provides otherwise*, the motion [for attorney's fees] must . . . be filed no later than 14 days after the entry of judgment . . . ."  Fed. R. Civ. P. 54(d)(2)(B)(i) (emphasis added).  In light of this language, courts have rejected the notion that fee awards are warranted only after entry of judgment.  *See, e.g.*, *Beata Music LLC v. Danelli*, No. 18-CV-6354 (JGK), 2022 WL 1471031, at *1 n.2 (S.D.N.Y. May 10, 2022) (observing that "Rule 54(d)(2)(B), which generally governs the timing of a motion for attorney's fees, only explicitly sets a deadline by which a motion for attorney's fees must be filed; it does not prohibit the filing of such a motion

7

before the entry of judgment" (citing *Keister v. PPL Corp.*, 677 F. App'x 63, 68–69 (3d Cir. 2017) (unpublished))).

### B.    The Totality of Circumstances Support Finding That This Is An Exceptional Case

Under the well-settled "American Rule," each litigant is responsible for the costs of their attorneys' fees, regardless of which side prevails subject, to a limited number of exceptions.  *See Astrue v. Ratliff*, 560 U.S. 586, 591 (2010); *Zhi Zhong Qiu v. Diamond*, No. 19-CV-2050 (ER), 2020 WL 2192712, at *2 (S.D.N.Y. May 6, 2020).  One exception arises under the  Patent Act, which provides that a "court in exceptional [patent infringement] cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  An "exceptional case" is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).  "[S]anctionable conduct is not the appropriate benchmark" for an unreasonable manner of litigating a case.  *Id.* at 555.  Were this the case, the standard for "exceptional case" fees would be "so demanding that it would appear to render § 285 largely superfluous."  *Id.* at 557.  Accordingly, "a district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees."  *Id.* at 555.  Ultimately, whether a case is exceptional is a case-by-case determination, made in consideration of "the totality of the circumstances," which may include, *inter alia*, "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."  *Id.* at 554 & n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)).

The Court affirms its prior conclusion that the "unreasonable manner in which the case was litigated" supports finding this case exceptional. (Aug. 2025 M&O, Dkt. 106, at 10 (quoting *Octane Fitness*, 572 U.S. at 554).) As the Court noted, Defendants "exceeded the bounds of zealous client advocacy and wasted both Plaintiff's and the Court's time with *ad homin[e]m* attacks and undeveloped legal arguments." (*Id.* at 11.) Specifically, the Court noted:

> Throughout Defendants' four major submissions presently before the Court— Defendants' brief in support of their motion for summary judgment, reply in support of their motion for summary judgment, opposition to Plaintiff's motion to strike Defendants' reply, and opposition to Plaintiff's motion for summary judgment—defense counsel has engaged in numerous personal attacks on opposing counsel and witnesses, including arguments based on unfounded, self-serving interpretations of their personal beliefs and misrepresentations about the contents of Plaintiff's submissions. (*Compare* Defs.' Mem. at 19 ("It is embarrassing to see [Plaintiff's expert witness,] Prof. Peterson[,] view ordinary people as being very ignorant."), *with* Peterson Report (not discussing or referring at all to Dr. Peterson's personal views on "ordinary people"); *see* Defs.' Mem. at 24–25 (calling Dr. Peterson's work a "sloppy mental experiment" and referring to Defendants' own interpretation of Dr. Peterson's report as "obvious[ly]" correct); Strike Opp'n at 3 ("It is surprising to see two experienced attorneys treat a significant legal issue with indifference."); *id.* (raising "the question of the sincerity of Plaintiff's legal research" and Plaintiff's "professional fairness" based on the existence of Plaintiff's submission opposing Defendants' reply 56.1 statement).) In particular, defense counsel's assertions that Dr. Peterson "may not possess sufficient understanding of the English language to understand a patent claim," that Dr. Peterson "would [be] embarrass[ed]" if he presented his "report[ ] at an engineering conference," and that "the attorneys for Plaintiff welcome[ ] any dispute that generate[s] work for them," cross the line between colorful legal rhetoric and gratuitous, baseless disparagement. (Defs.' Mem. at 13, 26, 30.)

(*Id.* at 10 (quoting *Tools III*, 2024 WL 4350466, at *5).)

In moving for reconsideration, Defendants assert that these are "[i]solated [i]nstances" of misbehavior that occurred in "just a small portion of the case," and therefore are not a basis for fees. (Recons. Mot., Dkt. 112, at 8–10.) This argument strains credulity. Throughout this case, Defendants—primarily through attorney David Fink—resorted to *ad hominem* attacks, petty

insults, and baseless accusations of deception and bad faith. At one point, Fink responded to a letter from Plaintiff's counsel, "you are relying on a case from 146 years ago to support your legal argument[ for patent infringement]. You might want to consider updating your legal data base." (Dkt. 24-4.) Elsewhere, Fink castigated a litigant for "foolishly repeat[ing] [a] false notice to amazon.com," "[d]espite being notified with a detailed explanation as to [their] misunderstanding of the law"; as a result, he threatened, "[y]ou have placed your company in danger." (Dkt. 24-2.)[7] Defendants also charged Plaintiff with "resort[ing] to insults" as a manner of "deal[ing] with its inability to find factual or legal arguments," (Dkt. 42, at 19); adopting a "surreptitious strategy . . . to mislead the Court," (Dkt. 45, at 8); "desperately wasting the Court's time and injuring the Defendants in the hope that the Defendants will surrender," (*id.*); "perceiv[ing] an opportunity to make a technically correct statement to knowingly mislead the Court," (*id.* at 9); "using every ploy available" to make an argument, (*id.* at 10); "desperate[ly] attempt[ing] to simply complain and waste time," (Dkt. 49, at 2); "repeatedly violat[ing] their duties to the Court by concealing information, and making contradictory arguments," (Dkt. 68, at 6); and "decid[ing] to be a co-conspirator" in misleading the Court, (*id.* at 3).

Frequently, the Court denied these assertions as meritless. To highlight just a few examples: In 2020, Defendants submitted filings accusing Plaintiff of "purposefully delay[ing] serving" its Complaint, to use "the pending lawsuit as a sword against Defendants to damage them and have them surrender to Plaintiffs [sic] demands," (Dkt. 27, at 6), and "malic[iously]" using the Complaint to "intentionally threaten customers" of Defendants, (Dkt. 19, at 2–3). The Court rejected these arguments. *See Tools I*, 2021 WL 4340949, at *4–5 (dismissing argument that

---

[7] Although Fink stated he "regret[ed]" being rude, he doubled down, stating that he "had no options but to make [his] message very strong." (Dkt. 24-2.)

"Plaintiff acted in bad faith by not serving the Complaint for over two months, and instead us[ed] it to 'threaten and discourage customers of the Defendants'"). And in 2021, Defendants accused Plaintiffs of engaging in a "pattern of abuse," "shamelessly obtain[ing]" two bites at the apple, and intentionally "increas[ing] the work for both the Court and the Defendants." (Dkt. 40, at 3; *id.* at 2 (seeking to strike Plaintiff's Claim Construction Memorandum because Plaintiff proposed a "new alternative claim construction[] for each disputed term").) Again, the Court rejected this argument. (05/27/2021 Min. Entry (describing denial from the bench of motion to strike).)

It is one thing to zealously advocate on behalf of a client, and to legitimately contest an opponent's point. It is quite another to turn litigation into a catfight, ill-befitting the decorum and standards to which this profession holds itself. Defendants' filings in this case, rife with sanctimonious outrage, caustic insults, and unsubstantiated accusations, constitute an unreasonable manner of litigating. *See Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1324–25, 1328 (Fed. Cir. 2011) (noting that, while it is "not improper for a patentee to vigorously enforce its patent rights," this attitude "cannot overpower a litigant's and its counsel's obligation to file cases reasonably based in law and fact and to litigate those cases in good faith," and affirming award of exceptional case fees in part due to plaintiff's snide interrogatory responses and deposition testimony displaying a cavalier attitude to the patent litigation process). And although Defendants aver that they had "no cause to be aware" of Fink's conduct, (Recons. Mot., Dkt. 112, at 8–9), a client, who "voluntarily cho[oses] this attorney," may not "avoid the consequences of the acts or omissions of this freely selected agent," *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34 (1962); *accord Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 396–97 (1993) (citing *Link*, 370 U.S. at 633–34).

As before, Defendants attempt to argue that it was Plaintiff, not Defendants, that engaged in unreasonable conduct. (*Compare* Recons. Mot., Dkt. 112, at 10–11 (arguing that Plaintiff's litigation conduct "[w]asted the Court's [t]ime" and was "unreasonable"), *with* Aug. 2025 M&O, Dkt. 106, at 11 (addressing, and rejecting, the same argument).) Specifically, Defendants assert that Plaintiff's litigation conduct wasted time because Plaintiff sought a permanent injunction approximately one year prior to the expiration of their disputed patents, which the Court issued one business day before the patents expired. (Recons. Mot., Dkt. 112, at 10–12; *see also* Dkt. 100 (12/16/2024 motion for permanent injunction); Aug. 2025 M&O, Dkt. 106 (granting permanent injunction on August 29, 2025); 10/10/2025 Dkt. Order (explaining patents expired on September 2, 2025).) As a result, Defendants claim, "the Court spent time and resources drafting an analysis and Order that was ultimately moot." (Recons. Mot., Dkt. 112, at 11.) Again, the Court disagrees. Although *Octane*'s totality-of-the-circumstances inquiry supports looking at the conduct of the movant for fees, *see Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prods., Inc.*, 790 F.3d 1369, 1373 (Fed. Cir. 2015), the Court discerns no unreasonable conduct by Plaintiff. Plaintiff moved for, and received, a permanent injunction while its patents were still valid. *Compare* (Dkt. 100 (moving for a permanent injunction approximately nine months before patents' expiration), *and* Dkt. 106 (granting permanent injunction before patent expiration)), *with AML IP, LLC v. Aero Glob., LLC*, No. 23-11264 (DEH), 2025 WL 2673691, at *8 (S.D.N.Y. Sep. 18, 2025) (finding unreasonable and frivolous litigation conduct in part because a party filed for a permanent injunction on an expired patent). The requested relief was far from moot or pointless. (*See* 10/10/2025 Dkt. Order (explaining the permanent injunction ordered Defendants to destroy all infringing products and that Defendants still had to comply with that order despite patent's expiration).) Patent-holders are entitled to certain protections during the *entire life* of the patent, including protections against

12

infringement up until the moment the patent expires. *See McNeil-PPC, Inc. v. L. Perrigo Co.*, 337 F.3d 1362, 1372 (Fed. Cir. 2003) (A patent owner has the "right to exclude others from making, using, and selling the invention and to enforce those rights until [its patents are] held invalid [or expire]." (alteration in original) (quoting *Concrete Unlimited Inc. v. Cementcraft, Inc.*, 776 F.2d 1537, 1539 (Fed. Cir. 1985)))). Defendants' position, if adopted, would unduly curtail patent-holders from exercising their rights.

Other facts and circumstances similarly support finding this case "exceptional." As the Court noted, Defendants frequently advanced arguments that were "borderline-frivolous," *Tools III*, 2024 WL 4350466, at *13 n.10; "silly semantic[s]," *id.* at *9; "simply incorrect," *id.* at *14 n.13; "nearly devoid of citations to relevant legal principles," *id.* at *6; and "rife with unsupported assumptions[] [and] logical fallacies," *id.*; *see Pirri v. Cheek*, No. 19-CV-0180 (PAE), 2020 WL 2520593, at *11 (S.D.N.Y. May 18, 2020) (documenting "baseless or frivolous" arguments plaintiff made as warranting exceptional case fees), *aff'd*, 851 F. App'x 183 (Fed. Cir. 2021) (unpublished); *Focus Prods. Grp. Int'l, LLC v. Kartri Sales Co.*, No. 15-CV-10154 (PAE) (SDA), 2023 WL 3815276, at *7 (S.D.N.Y. June 5, 2023) (imposing exceptional case fees in the wake of defendants taking "substantively unreasonable" positions or ones "devoid of legal authority or factual support"), *vacated and remanded on other grounds*, 156 F.4th 1259 (Fed. Cir. 2025). Indeed, Defendants' submissions on summary judgment were sufficiently deficient that the Court had to remind Defendants of the basic requirements of Federal Rule of Civil Procedure 56(c)(1). *Tools III*, 2024 WL 4350466, at *5 n.7; *see also Focus Prods.*, 2023 WL 3815276, at *6 (imposing exceptional case fees based in part on similar behavior). Although Defendants claim that *some* of their arguments were adopted by the Court, this fact cannot rescue the unreasonable claims and arguments they advanced. "[W]here a fee application is based on a party's unreasonable litigation

13

conduct, the issue is whether that conduct, *in toto*, rendered the case 'exceptional,' not whether this misconduct was uninterrupted." *Focus Prods.*, 2023 WL 3815276, at \*6 (collecting cases).

In sum, the Court has considered the totality of circumstances and finds this case exceptional and that fees are warranted.

## CONCLUSION

Defendants' motion for reconsideration is DENIED. The case is closed.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: June 3, 2026
Brooklyn, New York